STATE OF NORTH CAROLINA v. CHAD LEE DALTON

No. COA95-1049

(Filed 18 June 1996)

**1. Burglary and Unlawful Breakings § 57 (NCI4th)— first-degree burglary—sufficiency of evidence**

The evidence was sufficient to be submitted to the jury in a prosecution for first-degree burglary where it tended to show that defendant told his companions there was a house where a lady lived in which they might be able to "get some stuff for some money"; during the dark early morning hours when the victim was asleep on her sofa, defendant opened her sliding glass door and stepped inside her kitchen; defendant took a knife from the kitchen and took a purse containing $300 to $400, jewelry and other valuables; and defendant exited the back door and handed the purse to one of his companions.

**Am Jur 2d, Burglary § 45.**

**2. Rape and Allied Offenses § 120 (NCI4th)— attempted first-degree rape—sufficiency of evidence**

The evidence was sufficient to be submitted to the jury in a prosecution for attempted first-degree rape where it tended to show that defendant and a companion had looked through the victim's house and were preparing to leave when defendant stated he was "horny" and wanted to rape the victim; defendant said he would hold a knife to the victim's throat and instructed his companion to put a pillow over her face so defendant could rape

her; when the victim woke up defendant was on top of her trying to pull down her shorts; she felt a knife at her neck and defendant told her that if she opened her eyes he would "hurt [her] real bad"; defendant called her obscene names and told her she was going to get what she deserved; and the victim wrestled defendant and kneed him in the groin before he and his companion fled out the back door.

**Am Jur 2d, Rape § 88.**

**Sufficiency of allegations or evidence of serious bodily injury to support charge of aggravated degree of rape, sodomy, or other sexual abuse. 25 ALR4th 1213.**

**3. Robbery § 65 (NCI4th)— robbery with a dangerous weapon—insufficiency of evidence**

The trial court erred in denying defendant's motion to dismiss the charge of robbery with a dangerous weapon where there was evidence that defendant may have been in possession of a knife, but there was no evidence that he used it or threatened to use it to harm the victim during the taking of her purse, as the taking occurred while the victim was sleeping; furthermore, defendant's alleged use of the knife while attempting to rape the victim was not so joined in time and circumstances with the taking of the purse as to be part of one continuous transaction.

**Am Jur 2d, Robbery § 25.**

**4. Conspiracy § 28 (NCI4th)— multiple intended victims— one conspiracy—insufficiency of evidence of multiple conspiracies**

The evidence was insufficient to support the existence of three separate conspiracies to commit second-degree rape, although defendant and his companions went to three homes in search of a victim, where it tended to show that defendant and his co-conspirators had as their only objective to find someone to rape; they did not plan to or agree to rape a specific woman but instead went from home to home looking for a victim; the time interval from formation of the conspiracy until its abandonment was brief (a few hours); the number and identity of the participants remained the same throughout; and only one meeting occurred between the participants in planning the crime.

**Am Jur 2d, Conspiracy §§ 11, 37.**

STATE v. DALTON

[122 N.C. App. 666 (1996)]

Appeal by defendant from judgments entered 23 March 1995 by Judge James M. Webb in Forsyth County Superior Court. Heard in the Court of Appeals 15 May 1996.

*Attorney General Michael F. Easley, by Assistant Attorney General Newton G. Pritchett, Jr., for the State.*

*Marilyn E. Massey for defendant-appellant.*

WALKER, Judge.

Defendant was convicted by a jury on one count of first-degree burglary, one count of attempted first-degree rape, one count of robbery with a dangerous weapon, and three counts of conspiracy to commit second-degree rape. The trial court sentenced defendant to concurrent prison terms of life for the first-degree burglary, twenty years for the attempted first-degree rape, fourteen years for the robbery with a dangerous weapon, and ten years for each of the conspiracies to commit second-degree rape.

The evidence tended to show that in the afternoon hours of 26 July 1994, Jeffrey Blanken, Corey Hicks, and Johnny Vaughn came to defendant's workplace at Hardee's in Lewisville, North Carolina. When defendant finished his shift, the four men walked to a grocery store, where defendant arranged for a friend to purchase some beer for them. They then returned to Hardee's to get the day's leftover chicken, went to defendant's house, and proceeded to a bridge near defendant's home. The four men sat under the bridge to eat the chicken and drink the beer.

While sitting under the bridge, the men's conversation turned to the subject of girls. The suggestion was then made that they should go and find a girl to rape. Defendant stated he knew a house where they could go. The four proceeded to the home of Carolyn S. While two of them waited, the other two went to the front door and rang the bell. There was no response, and the four went to the rear of the house. When the rear floodlights came on, they ran from the area of the house. They then continued to the residence of Peggy S., where defendant entered the garage and took a radio. The four then proceeded to the home of Donna E., where they looked in the window and saw a woman lying on the sofa. The men left that residence and went to the apartment of Wilma W., where they knocked on the door, asked for water, and left.

STATE v. DALTON

[122 N.C. App. 666 (1996)]

Finally, the four men stopped at the home of Kelly B. Defendant and Jeffrey Blanken entered the house from the rear entrance, which opened up into the kitchen. Defendant looked through a purse on the kitchen table, then picked up a knife from the kitchen counter. Defendant and Blanken looked through the rest of the house and then entered the living room, where Ms. B. was asleep on the sofa. Defendant picked up another purse from the floor beside the sofa and left the house. After rummaging through the purse, he threw it aside and re-entered the house. Ms. B. awoke with a man she later identified as defendant sitting on top of her trying to remove her shorts. Defendant was threatening her with a knife. After a struggle, defendant and Jeffrey Blanken left the house, and the four men returned to the bridge. Defendant was arrested on the evening of 2 August 1994.

Defendant assigns as error the trial court's denial of his motions to dismiss certain charges against him. The question presented by a defendant's motion to dismiss is whether the State has presented substantial evidence of the defendant's guilt on every essential element of the crime charged. *State v. Corbett and State v. Rhone*, 307 N.C. 169, 182, 297 S.E.2d 553, 562 (1982). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* at 182-83, 297 S.E.2d at 562.

[1] Defendant first argues that the court erred by denying his motion to dismiss the first-degree burglary charge (94 CRS 26597). The essential elements of this offense are: (1) the breaking (2) and entering (3) into a dwelling (4) at night (5) while the dwelling is occupied (6) with the intent to commit a felony. *State v. Wells*, 290 N.C. 485, 496, 226 S.E.2d 325, 332 (1976); *see also* N.C. Gen. Stat. § 14-51 (1993). Defendant concedes that the State presented "some evidence" of each of the above-listed elements but contends that such evidence was not substantial.

The State presented evidence that defendant told his three companions there was a house where a lady lived in which they might be able to "get some stuff for some money" (referring to the house of Kelly B.). During the dark early morning hours of 27 July 1994, Kelly B. was in her house, asleep on the sofa. Defendant went up the back steps, opened the sliding glass door, and stepped inside the kitchen. Defendant got a knife from the kitchen and took a purse from beside the sofa in the living room. The purse contained $300 to $400, jewelry, and other valuables. Defendant exited the back door and handed the purse to one of his companions. We agree with the State that this was

substantial evidence of defendant's guilt of first-degree burglary, and the trial court correctly denied defendant's motion to dismiss this charge.

[2] Defendant next argues that the trial court erred by denying his motion to dismiss the charge of attempted first-degree rape (94 CRS 26598). The essential elements of this offense are (1) an attempt to (2) engage in vaginal intercourse (3) with another person (4) by force and (5) against the will of the other while (6) employing a dangerous weapon, or inflicting serious injury on the victim or another person. *State v. Worsley*, 336 N.C. 268, 275, 443 S.E.2d 68, 71 (1994); *see also* N.C. Gen. Stat. § 14-27.2 (1995).

The State's evidence tended to show that after entering Kelly B.'s house, defendant and Jeffrey Blanken looked through the house and were preparing to leave when defendant stated he was "horny" and wanted to rape Ms. B. Defendant said he would hold a knife to Ms. B.'s throat and instructed Blanken to put a pillow over her face so defendant could rape her. When Ms. B. woke up, defendant was on top of her trying to pull down the boxer shorts she was wearing. She felt a knife at her neck and defendant told her that if she opened her eyes he would "hurt [her] real bad." Defendant called her obscene names and told her that she was going to get what she deserved. Ms. B. wrestled defendant and kneed him in the groin before he and Blanken fled out the back door.

Defendant claims that the "various accounts" of what transpired at the home of Kelly B. "cause serious credibility problems and give rise to a reasonable doubt." While the versions of events given by the State's witnesses may have differed in minor respects, any discrepancies or contradictions were for the jury to resolve. *State v. McKinney*, 288 N.C. 113, 117, 215 S.E.2d 578, 581 (1975). Moreover, in order to withstand defendant's motion to dismiss, the State was not required to prove the elements of the charge beyond a reasonable doubt, but only had to present substantial evidence of those elements. We find that there was substantial evidence that defendant committed the offense of attempted first-degree rape, and the trial court did not err in denying defendant's motion to dismiss this charge.

[3] In his third assignment of error, defendant contends the trial court erred by denying his motion to dismiss the charge of robbery with a dangerous weapon (94 CRS 26599). To withstand this motion, the State had to prove the following elements: (1) the unlawful taking of the personal property of another (2) from his person or presence

**STATE v. DALTON**

[122 N.C. App. 666 (1996)]

(3) by a person who, having in his possession, or with the use or threatened use of, a weapon (4) threatens or endangers the life of the other person. *State v. Porter,* 303 N.C. 680, 686, 281 S.E.2d 377, 382 (1981); *see also* N.C. Gen. Stat. § 14-87 (1993).

Defendant contends the State failed to establish that an armed robbery took place because the evidence did not show that the taking of Kelly B.'s purse occurred as a result of the use or threatened use of a weapon whereby Ms. B.'s life was endangered. In the light most favorable to the State, the evidence showed that defendant and Jeffrey Blanken entered the rear of Ms. B.'s house. While in the kitchen, defendant picked up a knife. He and Blanken then proceeded into the rest of the house and eventually into the living room where Ms. B. was asleep on the sofa. Defendant and Blanken saw Ms. B.'s purse on the floor. Defendant picked up the purse, left the house with Blanken, and looked through the purse. Defendant and Blanken then re-entered the house. Sometime thereafter, Ms. B. awoke with defendant on top of her, threatening her with a knife. Defendant claims that an armed robbery did not occur because the purse was taken while Ms. B. was asleep and before there was any threat of harm to Ms. B. with the alleged use of the knife.

In order for an armed robbery to occur, the use of force must be such as to induce the victim to part with the property. *State v. Richardson,* 308 N.C. 470, 477, 302 S.E.2d 799, 803 (1983). Armed robbery requires both an act of possession of a weapon and an act whereby the weapon is used to endanger the life of the victim. *State v. Gibbons,* 303 N.C. 484, 491, 279 S.E.2d 574, 578 (1981). In *Gibbons,* the victim was beaten with fists by one of three men who had broken into her home. A purse was taken during the course of the incident. One of the co-defendants had a shotgun while in the house. *Id.* at 485, 279 S.E.2d at 575. However, the Supreme Court held that no armed robbery occurred because there was no evidence that the gun was used in any way to harm or threaten the victim in order to induce her to part with the purse. *Id.* at 490, 279 S.E.2d at 578. In the instant case, while defendant may have been in possession of a knife, there was no evidence he used it or threatened to use it to harm Ms. B. during the taking of the purse. The taking of the purse occurred while Ms. B. was asleep; therefore, she could not have known of the presence of the knife and could not have been induced by it to part with her purse.

The State concedes that defendant's use or threatened use of the knife did not precede or accompany the taking of the purse. However,

the State argues that defendant could still be found guilty of armed robbery because his use or threatened use of a weapon was "so joined by time and circumstances with the taking as to be part of one continuous transaction." *State v. Olson*, 330 N.C. 557, 566, 411 S.E.2d 592, 597 (1992). In *Olson*, the defendant used a gun to shoot a homeowner who returned to his home just as defendant was preparing to leave with some items he had obtained after breaking into the house. *Id.* at 562, 411 S.E.2d at 594. In contrast, defendant here took the purse, left the house, gave the purse to Corey Hicks, and re-entered the house before he decided to rape Ms. B. We cannot conclude that defendant's alleged use of the knife while attempting to rape Ms. B. was so joined in time and circumstances with the taking of the purse as to be part of one continuous transaction. Moreover, unlike *Olson*, the harm or threatened harm in the instant case was not for the purpose of completing the taking of Ms. B.'s property. For the foregoing reasons, we hold that the trial court erred by denying defendant's motion to dismiss the charge of robbery with a dangerous weapon, and we arrest judgment on that charge.

**[4]** Defendant's last four assignments of error relate to the trial court's denial of his motions to dismiss the three charges of conspiracy to commit second-degree rape (94 CRS 28953, 28954, and 28955). He claims that the State did not present sufficient evidence that any of the charged conspiracies existed. In the alternative, he claims that the evidence supported the existence of at most one conspiracy.

A criminal conspiracy is an agreement between two or more people to commit a substantive offense. *State v. Griffin*, 112 N.C. App. 838, 840, 437 S.E.2d 390, 392 (1993). The agreement may be an express understanding or a mutual implied understanding. *State v. Bell*, 311 N.C. 131, 141, 316 S.E.2d 611, 617 (1984). The existence of a conspiracy may be established by direct or circumstantial evidence. *Id.* Once an unlawful agreement is formed, the conspiracy continues until it is either completed or abandoned. *Griffin*, 112 N.C. App. at 841, 437 S.E.2d at 392. Where, as here, the State elects to charge multiple separate conspiracies, it must prove the existence of separate and distinct agreements to commit the substantive offense(s). *Id.* at 840, 437 S.E.2d at 392. The State contends that three separate conspiracies were formed and abandoned during the early morning hours of 27 July 1994.

In the light most favorable to the State, the evidence showed that defendant and his three companions agreed to rape a female by going

**STATE v. DALTON**

[122 N.C. App. 666 (1996)]

up to her door, knocking her out, and raping her. The four agreed that in the event of a struggle, they should be sure the victim did not scratch them, thereby getting skin under her fingernails. They further agreed that after raping the victim they should put her into the bathtub to wash off the evidence. We find that this constitutes substantial evidence of one conspiracy to commit second-degree rape. However, we agree with defendant that the evidence did not support the existence of three separate conspiracies.

This Court has held that in determining the number of conspiracies formed, several factors must be considered, including the objective, the time interval, the number of participants, and the number of meetings. *State v. Rozier,* 69 N.C. App. 38, 52, 316 S.E.2d 893, 902, *cert. denied,* 312 N.C. 88, 321 S.E.2d 907 (1984). Each of defendant's alleged co-conspirators testified that on the night of the alleged offenses, only one objective existed among the four men: to "find somebody that night and rape them." They testified that they did not plan or agree to rape a specific woman such as Carolyn S., Wilma W., or Donna E. Moreover, the time interval was brief (a few hours), the number and identity of the participants remained the same throughout, and only one meeting occurred between the participants in planning the crime. The evidence here showed at most that the men agreed to rape *someone.* Pursuant to this general objective, they went to Ms. S.'s house. After having no success there, the men did not abandon their plan, but continued in their effort to find a woman to rape. Over the course of the evening, this effort took them to the homes of Ms. W., Ms. E., and Ms. B. Their plan was abandoned only upon leaving Ms. B.'s home, after which time they stopped looking for a woman to rape. Since the evidence supports the existence of only one conspiracy, it was error for the trial court to deny defendant's motions to dismiss two of the three conspiracy charges. We therefore arrest judgment in 94 CRS 28954 and 28955.

No error in 94 CRS 26597, 26958, and 28953.

Judgment arrested in 94 CRS 26599, 28954, and 28955.

Remanded for resentencing.

Judges GREENE and MARTIN, JOHN C. concur.