STATE OF NORTH CAROLINA
v.
LEMONT DORRELL MEDLIN
No. COA07-1328
Court of Appeals of North Carolina
Filed September 2, 2008
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General V. Lori Fuller, for the State.
Haral E. Carlin for Defendant.
McGEE, Judge.
A jury found Lemont Dorrell Medlin (Defendant) guilty on 20 April 2007 of: one count of assault with a deadly weapon inflicting serious injury; one count of robbery with a dangerous weapon; one count of felonious possession of stolen property; one count of felony fleeing to elude arrest; and one count of felonious breaking or entering. The trial court determined that Defendant had a prior record level of IV for sentencing purposes. The trial court sentenced Defendant to: a term of 117 months to 150 months in prison on the charge of robbery with a dangerous weapon; a consecutive term of forty-six to sixty-five months in prison on the charge of assault with a deadly weapon inflicting serious injury; and a consecutive term of eleven to fourteen months in prison on the charge of felony fleeing to elude arrest. The trial court consolidated Defendant's convictions for felonious possession of stolen goods and felonious breaking or entering and sentenced Defendant to a consecutive term of eleven to fourteen months in prison on those two charges. However, the trial court suspended Defendant's sentence with regard to those two charges and placed Defendant on supervised probation for a term of thirty-six months following his release from prison on the robbery, assault, and eluding arrest charges.
The State's evidence at trial tended to show that Nancy Miller (Ms. Miller) was shopping at a grocery store (the grocery store) in Wake County, North Carolina, on the afternoon of 6 January 2006. Ms. Miller testified that when she exited the grocery store, she noticed a silver Chrysler PT Cruiser vehicle (the PT Cruiser) parked in a fire lane outside of the grocery store. Ms. Miller "noticed there was a short black man in the [PT Cruiser]" as she walked by. Ms. Miller walked to her own vehicle, opened her trunk, and started unloading groceries from her shopping cart.
Ms. Miller testified that as she unloaded her groceries, she heard a loud noise and saw the PT Cruiser coming towards her. The PT Cruiser struck Ms. Miller, pinning her against the bumper of her vehicle and knocking her to the ground. Ms. Miller testified:
[A]ll I thought when it happened was that [the driver of the PT Cruiser] was having a terrible accident. And the next thing I know, I'm on the ground between my car and another car, and people are trying to help me.
. . . .
. . . . The first person that tried to help me, I asked them for my purse so I could call my husband. And she said ["]this black man just got out of his car and took your purse.["] And of course then I just [could not] believe [what was] happening.
On cross-examination, Ms. Miller testified that she saw that the driver of the PT Cruiser was a short, bald, black male. However, Ms. Miller could not definitively identify Defendant, who fit that general description, as the driver of the PT Cruiser.
Renee Irons (Ms. Irons) testified at trial that she was driving through the grocery store parking lot on the afternoon of 6 January 2006. Ms. Irons testified that as she drove through the parking lot, she saw a shopping cart turned over in front of a silver PT Cruiser vehicle. Ms. Irons also heard a woman screaming. Ms. Irons saw the driver of the PT Cruiser exit the vehicle, walk over towards the shopping cart, pick up a purse, return to the vehicle, and drive away. Ms. Irons identified the driver of the PT Cruiser as a medium-build black male.
Shahab Shirzadi (Mr. Shirzadi) testified at trial that he was in the grocery store parking lot on the afternoon of 6 January 2006. Mr. Shirzadi testified that he heard an impact, and saw that a female had been struck by a car. Mr. Shirzadi saw a PT Cruiser near the woman, and saw a black male exit the PT Cruiser. The man was wearing a ski cap, long pants, and a jacket. According to Mr. Shirzadi, "I thought [the man] was going to help out, not realizing that he had made the impact. And then I saw [the man] grab the lady's purse and [get] in his car and [take] off."
Gerald Fiks (Mr. Fiks) testified at trial that he was sitting in his vehicle across the street from the grocery store on the afternoon of 6 January 2006. Mr. Fiks testified that he observed a commotion outside the grocery store, and then saw a PT Cruiser "exploding" out of the grocery store parking lot. Mr. Fiks thought that something "didn't look right," so he followed the PT Cruiser. Mr. Fiks wrote down the PT Cruiser's license plate number and telephoned the number to police.
Michael Hayes (Mr. Hayes) testified that he worked for the City of Raleigh as a firefighter. Mr. Hayes further testified at trial that on the afternoon of 6 January 2006, he was sitting in a vehicle at an intersection near the grocery store. While waiting at a red light, Mr. Hayes observed a silver PT Cruiser go through the intersection and hit a guardrail. Mr. Hayes testified that the driver of the PT cruiser, a black male, exited the vehicle and ran away from the intersection toward a Waffle House restaurant and a hotel. The driver was wearing baggy pants, a gray jacket, and some sort of head covering. Mr. Hayes chased the driver a short distance until police officers arrived and began to pursue the driver.
Town of Cary Police Officer Sheri Abraham (Officer Abraham) testified at trial that she received a police broadcast on the afternoon of 6 January 2006 advising that a silver PT Cruiser driven by a black male wearing dark clothing had been involved in a hit-and-run. Officer Abraham observed a silver PT Cruiser turn into a gas station, and saw an "average-sized" black male wearing dark blue jeans and a dark jacket exit the vehicle. Officer Abraham saw that the license plate of the PT Cruiser matched the license plate of the vehicle from the police broadcast. The driver got back into the PT Cruiser and drove out of the gas station. Officer Abraham followed the vehicle with her lights and siren on, but the driver failed to stop. Officer Abraham testified that during the chase, the driver of the PT Cruiser drove through stop signs and red lights. The PT Cruiser collided with two other vehicles, and then hit a guardrail. The driver of the PT Cruiser exited the vehicle and ran from the scene, and Officer Abraham followed the driver on foot towards a Waffle House restaurant.
Officer Abraham testified that while she was chasing the driver on foot, a number of persons indicated that the driver had run towards a nearby hotel. Police officers observed movement on the roof of the hotel. Police were able to climb up to the roof, and located Defendant on the hotel roof. When police brought Defendant down from the hotel roof, he was wearing the same jacket that Officer Abraham had observed the driver of the PT Cruiser wearing earlier at the gas station.
Detective Jim Young with the Cary Police Department (Detective Young) testified at trial that following Defendant's arrest, he searched the silver PT Cruiser involved in the accident. Detective Young found Ms. Miller's purse in the PT Cruiser. Detective Young also found a black bookbag inside the PT Cruiser containing Defendant's birth certificate and other personal items belonging to Defendant.
Detective Young also testified at trial that he questioned Defendant following Defendant's arrest. According to Detective Young, Defendant admitted that he knew the PT Cruiser was stolen. Detective Young asked Defendant "[w]hy did you hit the lady with the car," and Defendant responded, "I over extended my turn. I thought she was dead and wanted to get as far away as I could." Detective Young then asked Defendant why he took Ms. Miller's purse. Defendant responded, "instinct, instinct, instinct. I didn't see her `til the last second. Nothing I could do. I got out to see her, I thought I couldn't  I thought I can't stay, got to go."
Defendant testified on his own behalf at trial. Defendant testified that he had lost his black bookbag on 1 January 2006, and the person who found Defendant's bookbag told Defendant to meet her at a local Waffle House on the afternoon of 6 January 2006 so that Defendant could retrieve his bookbag. After waiting for ten minutes outside the Waffle House, Defendant had the urge to use the bathroom and began to urinate near a corner of the Waffle House. Defendant then heard someone yell, "stop, police." Defendant testified that he then ran from the scene and hid on top of a hotel roof, where police later apprehended him. Defendant denied any involvement in the grocery store incident or subsequent car accidents involving the PT Cruiser. Defendant also denied having made a statement to Detective Young that he knew the PT Cruiser was stolen, or that he hit Ms. Miller with the PT Cruiser in the grocery store parking lot.
The jury began its deliberations on the morning of 20 April 2007. The jury deliberated approximately forty minutes and then returned its verdicts against Defendant. Defendant appeals.

I.
Defendant first assigns error to portions of the trial court's instructions to the jury regarding the charges of assault with a deadly weapon inflicting serious injury and robbery with a dangerous weapon. With regard to the assault charge, the trial court instructed the jury that to find Defendant guilty, it must find "that [Defendant] used a deadly weapon. A deadly weapon is a weapon which is likely to cause death or serious bodily injury." The trial court then added, "[a]n automobile is a deadly weapon." The trial court gave a similar instruction to the jury with regard to the robbery charge. Defendant argues that the trial court impermissibly invaded the province of the jury by instructing the jury that the PT Cruiser was a deadly weapon, when this was properly a determination for the jury to make.
Defendant did not object to the trial court's instructions at trial. We therefore review the trial court's instructions for plain error. See N.C.R. App. P. 10(b)(1)-(2), (c)(4).
Plain error includes error that is a fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done; or grave error that amounts to a denial of a fundamental right of the accused; or error that has resulted in a miscarriage of justice or in the denial to [the] appellant of a fair trial.
State v. Gregory, 342 N.C. 580, 586, 467 S.E.2d 28, 32 (1996). "[T]o prevail under the plain error rule, [a] defendant must convince this Court that (1) there was error and (2) without this error, the jury would probably have reached a different verdict." State v. Najewicz, 112 N.C. App. 280, 294, 436 S.E.2d 132, 141 (1993), disc. review denied, 335 N.C. 563, 441 S.E.2d 130 (1994).
Our Court has stated:
It is well settled that "'[w]here the alleged deadly weapon and the manner of its use are of such character as to admit of but one conclusion, the question as to whether or not it is deadly . . . is one of law, and the Court must take the responsibility of so declaring.'" "An instrument which is likely to produce death or great bodily harm under the circumstances of its use is properly denominated a deadly weapon."
State v. Adams, 156 N.C. App. 318, 323, 576 S.E.2d 377, 381, disc. review denied, 357 N.C. 166, 580 S.E.2d 698 (2003) (citations and emphasis omitted) (quoting State v. Torain, 316 N.C. 111, 119, 340 S.E.2d 465, 470, cert. denied, 479 U.S. 836, 93 L. Ed. 2d 77 (1986); State v. Joyner, 295 N.C. 55, 64, 243 S.E.2d 367, 373 (1978)). In State v. Charles, 92 N.C. App. 430, 374 S.E.2d 658 (1988), disc. review denied, 324 N.C. 338, 378 S.E.2d 800 (1989), for example, the defendant used a rope to strangle the victim until she lost consciousness. Id. at 434, 374 S.E.2d at 660. Our Court held that because the defendant used the cord in such a manner as was "likely [to] result in death or serious bodily injury. . . . the only reasonable inference is that the cord as used by [the] defendant was a dangerous weapon as a matter of law." Id. at 434, 374 S.E.2d at 660-61.
In the present case, the evidence at trial demonstrated that Defendant used a vehicle to strike a pedestrian and pin the pedestrian against another vehicle. It is clear that, when used in such a manner, a vehicle is "likely [to] result in death or serious bodily injury[.]" Id. at 434, 374 S.E.2d at 661. We therefore hold that "'the alleged deadly weapon and the manner of its use are of such character as to admit of but one conclusion'": that the PT Cruiser was a deadly weapon as a matter of law. Adams, 156 N.C. App. at 323, 576 S.E.2d at 381 (quoting Torain, 316 N.C. at 119, 340 S.E.2d at 470 (citation omitted)). The trial court therefore did not err or commit plain error by instructing the jury that the PT Cruiser was a deadly weapon. Defendant's assignments of error are overruled.

II.
Defendant next assigns error to the trial court's denial of his motion to dismiss the charge of assault with a deadly weapon inflicting serious injury due to insufficiency of the State's evidence. To survive a motion to dismiss based on insufficient evidence, the State must present "substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of [the] defendant's being the perpetrator of such offense." State v. Powell, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980). Substantial evidence exists if, considered in the light most favorable to the State, the evidence "gives rise to a reasonable inference of guilt[.]" State v. Jones, 303 N.C. 500, 504, 279 S.E.2d 835, 838 (1981). However, a defendant's motion to dismiss must be granted "[i]f the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it[.]" Powell, 299 N.C. at 98, 261 S.E.2d at 117.
The elements of assault with a deadly weapon inflicting serious injury under N.C. Gen. Stat. § 14-32(b) are: "(1) an assault, (2) with a deadly weapon, (3) inflicting serious injury, (4) not resulting in death." State v. Jones, 353 N.C. 159, 164, 538 S.E.2d 917, 922 (2000).
Defendant first argues that element one was not met because the State's evidence demonstrates that he did not intend to strike Ms. Miller with the PT Cruiser. Defendant notes that according to Detective Young, Defendant made a statement indicating that he merely "over extended [his] turn," and "wasn't trying to hit [Ms. Miller] with the car." Defendant also points out that Ms. Miller originally thought that the collision was an accident. According to Defendant, this evidence demonstrates that he did not intentionally strike Ms. Miller with the PT Cruiser, and therefore did not assault her.
"While intent is a state of mind sometimes difficult to prove, the mind of an alleged offender may be read from his acts, conduct, and inferences fairly deducible from all of the circumstances." State v. Wilson, 315 N.C. 157, 163, 337 S.E.2d 470, 474 (1985). Viewed in the light most favorable to the State, the evidence in this case demonstrated that Defendant drove a PT Cruiser vehicle through a grocery store parking lot and collided with Ms. Miller. Defendant never attempted to provide assistance to Ms. Miller, nor did he inquire as to Ms. Miller's condition. Rather, immediately after striking Ms. Miller, Defendant exited the PT Cruiser, took Ms. Miller's purse, and returned to the PT Cruiser. Defendant then drove away from the parking lot at a high rate of speed, eluded police, crashed the PT Cruiser, and hid on a motel roof top.
While Defendant's statement to Detective Young is some evidence that the collision was an accident, we hold that the circumstances surrounding the collision provide substantial evidence from which a jury could infer that Defendant intended to assault Ms. Miller. Defendant's argument is without merit.
Defendant next argues that element three was not met because the State's evidence does not demonstrate that Ms. Miller sustained serious injuries as a result of the collision. "Relevant factors in determining whether serious injury has been inflicted include, but are not limited to: (1) pain and suffering; (2) loss of blood; (3) hospitalization; and (4) time lost from work." State v. Morgan, 164 N.C. App. 298, 303, 595 S.E.2d 804, 809 (2004).
Ms. Miller testified at trial that when the PT Cruiser hit her, it crushed her knees against the bumper of her car, and knocked off her glasses and one of her shoes. Ms. Miller was transported by ambulance to a hospital immediately following the collision. Ms. Miller testified that she sustained abrasions on her legs, as well as large bruises on both hands, both feet, and one entire arm. Ms. Miller also injured her back, which caused her significant pain and for more than a month caused her great difficulty walking. Further, Ms. Miller suffered significant emotional trauma following the incident, including insomnia, night terrors, and a constant fear of being out in public. Ms. Miller sought counseling for her emotional trauma.
Defendant contends that Ms. Miller's uncorroborated testimony was insufficient to establish the nature of her injuries. Defendant further argues that the State should have called ambulance attendants, emergency-room personnel, and other witnesses familiar with Ms. Miller's injuries to testify concerning her medical condition following the collision. We disagree. The State's uncontradicted evidence demonstrates that Ms. Miller sustained significant physical and emotional trauma as a result of the collision. These injuries resulted in Ms. Miller's hospitalization and impeded her ability to carry out everyday functions. We hold that the State produced substantial evidence to demonstrate that Ms. Miller sustained serious injuries as a result of the collision.
Defendant does not dispute the remaining elements of this offense. We therefore hold that the State introduced substantial evidence showing that Defendant committed the offense of assault with a deadly weapon inflicting serious injury. The trial court did not err in denying Defendant's motion to dismiss this charge. Defendant's assignment of error is overruled.

III.
Defendant next assigns error to the trial court's denial of his motion to dismiss the charge of robbery with a dangerous weapon due to insufficiency of the State's evidence. The elements of robbery with a dangerous weapon under N.C. Gen. Stat. § 14-87(a) are: "(1) an unlawful taking or an attempt to take personal property from the person or in the presence of another, (2) by use or threatened use of a firearm or other dangerous weapon, (3) whereby the life of a person is endangered or threatened." State v. Call, 349 N.C. 382, 417, 508 S.E.2d 496, 518 (1998).
Defendant argues that element two was not met in this case because Defendant only took Ms. Miller's purse as a mere afterthought to the assault. Defendant notes that the State introduced evidence of his statement to Detective Young that he accidentally hit Ms. Miller when he "over extended [his] turn" in the grocery store parking lot, and only took her purse because of "instinct, instinct, instinct." Defendant argues that this evidence demonstrates that Defendant only formed the intent to take Ms. Miller's purse after he struck her with the PT Cruiser, and therefore Defendant did not take Ms. Miller's purse "by use or threatened use of a . . . dangerous weapon[.]" Call, 349 N.C. at 417, 508 S.E.2d at 518.
To be convicted on a charge of robbery with a dangerous weapon, "the defendant's threatened use or use of a dangerous weapon must precede or be concomitant with the taking, or be so joined by time and circumstances with the taking as to be part of one continuous transaction." State v. Olson, 330 N.C. 557, 566, 411 S.E.2d 592, 597 (1992). Further,
when the circumstances of the alleged armed robbery reveal [that the] defendant intended to permanently deprive the owner of [her] property and the taking was effectuated by the use of a dangerous weapon, it makes no difference whether the intent to steal was formulated before the use of force or after it, so long as the theft and the use or threat of force can be perceived by the jury as constituting a single transaction.
State v. Fields, 315 N.C. 191, 203, 337 S.E.2d 518, 525 (1985).
In this case, the State's evidence tended to show that Defendant drove a PT Cruiser vehicle in a grocery store parking lot and collided with Ms. Miller, knocking her to the ground. Defendant immediately exited the PT Cruiser, retrieved Ms. Miller's purse, got back into the PT Cruiser, and drove away at a high rate of speed. This evidence was sufficient to support a jury finding that Defendant's use of the PT Cruiser preceded the taking, or was "so joined by time and circumstances with the taking as to be part of one continuous transaction." Olson, 330 N.C. at 566, 411 S.E.2d at 597. Further, under Fields, it does not matter whether Defendant formed the intent to take Ms. Miller's purse after he struck her with the PT Cruiser, because the collision and the taking "can be perceived by the jury as constituting a single transaction." Fields, 315 N.C. at 203, 337 S.E.2d at 525. Defendant's argument is therefore without merit.
Defendant also argues that element two was not met in this case because the State's evidence demonstrated that Defendant did not use the PT Cruiser to induce Ms. Miller to part with her purse. In State v. Gibbons, 303 N.C. 484, 279 S.E.2d 574 (1981), for example, the State's evidence demonstrated that the defendant, along with two other men, broke into the victim's home. Id. at 485, 279 S.E.2d at 575. One of the men was armed with a shotgun. Id. The men assaulted the victim with their fists, and stole the victim's purse. Id. Our Supreme Court held that there was insufficient evidence to support the defendant's conviction for robbery with a dangerous weapon because the evidence showed only that the men possessed a gun, but did not indicate that the men used the gun to induce the victim to part with her purse. Id. at 488-90, 279 S.E.2d at 577-78. See also State v. Dalton, 122 N.C. App. 666, 671, 471 S.E.2d 657, 660-61 (1996) (holding that even though the defendant possessed a knife when he took the victim's purse, the defendant did not actually use the knife to induce the victim to part with her purse because the victim was asleep at the time of the taking).
Defendant notes that Ms. Miller testified that she initially believed Defendant's collision with her had been an accident, and she did not realize that she had been robbed until after Defendant drove away with her purse. Defendant argues, relying on Gibbons and Dalton, that the fact that Ms. Miller did not know that she was being robbed demonstrates that Defendant's use of the PT Cruiser did not induce Ms. Miller to part with her purse.
Defendant's argument is without merit. N.C. Gen. Stat. § 14-87(a) does not require that a robbery victim be aware that she is being robbed when the defendant uses the dangerous weapon. Rather, N.C. Gen. Stat. § 14-87(a) only requires that the defendant use a dangerous weapon to effectuate the taking. Here, unlike in Gibbons and Dalton, the State's evidence demonstrated that Defendant used the dangerous weapon to render Ms. Miller physically helpless and unable to prevent the taking of her purse. Such evidence is sufficient to support a jury finding that Defendant took Ms.Miller's purse "by use or threatened use of a . . . dangerous weapon[.]" Call, 349 N.C. at 417, 508 S.E.2d at 518.
Defendant does not dispute the remaining elements of this offense. We therefore find that the State introduced substantial evidence that Defendant committed the offense of robbery with a dangerous weapon. The trial court did not err by denying Defendant's motion to dismiss this charge. Defendant's assignment of error is overruled.

IV.
Defendant next assigns error to the trial court's failure to instruct the jury on the offense of assault with a deadly weapon as a lesser-included offense of assault with a deadly weapon inflicting serious injury. Defendant did not object to the trial court's jury instructions at trial, and we therefore review the trial court's jury instructions for plain error.
Our Court has stated:
A jury instruction on a lesser included offense is required if it is supported by the evidence. But where the evidence is clear as to each element of the offense charged, the trial court may refrain from submitting a lesser included offense instruction to the jury. "The mere contention that the jury might accept the State's evidence in part and might reject it in part is not sufficient to require submission to the jury of a lesser offense." If none of the evidence presented to the trial court supports a crime of a lesser degree, a jury instruction on the lesser included offense is not required.
State v. Hurley, 180 N.C. App. 680, 683, 637 S.E.2d 919, 922 (2006), disc. review denied, 361 N.C. 433, 649 S.E.2d 394 (2007) (quoting State v. Black, 21 N.C. App. 640, 643-44, 205 S.E.2d 154,156, aff'd, 286 N.C. 191, 209 S.E.2d 458 (1974)). The test "is not whether the jury could convict [the] defendant of the lesser crime, but whether the State's evidence is positive as to each element of the crime charged and whether there is any conflicting evidence relating to any of these elements." State v. Leroux, 326 N.C. 368, 378, 390 S.E.2d 314, 322, cert. denied, 498 U.S. 871, 112 L. Ed. 2d 155 (1990).
The primary distinction between misdemeanor assault with a deadly weapon under N.C. Gen. Stat. § 14-33(c)(1) and felonious assault with a deadly weapon inflicting serious injury under N.C. Gen. Stat. § 14-32(b) is that a conviction for misdemeanor assault only requires a showing that a defendant used a deadly weapon during the assault, while a conviction for felonious assault requires a showing that a defendant both used a deadly weapon and inflicted serious injury during the assault. See State v. Owens, 65 N.C. App. 107, 110-11, 308 S.E.2d 494, 498 (1983). The trial court was therefore required to submit the misdemeanor assault charge to the jury if there was conflicting evidence regarding whether Ms. Miller suffered a serious injury as a result of the assault.
As discussed in Part II above, "[r]elevant factors in determining whether serious injury has been inflicted include, but are not limited to: (1) pain and suffering; (2) loss of blood; (3) hospitalization; and (4) time lost from work." Morgan, 164 N.C. App. at 303, 595 S.E.2d at 809. Ms. Miller testified at trial that the PT Cruiser collided with her, crushing her knees against the bumper of her car and knocking off her glasses and one of her shoes. Emergency personnel transported Ms. Miller to the hospital in an ambulance immediately following the collision. Ms. Miller sustained abrasions on her legs, as well as large bruises on both hands, both feet, and one entire arm. Ms. Miller also sustained an injury to her back that caused her significant pain and impaired her ability to walk for several weeks following the collision. Further, Ms. Miller experienced insomnia, night terrors, and continues to suffer from constant fear while out in public. Ms. Miller's emotional trauma required professional treatment. Defendant did not cross-examine Ms. Miller regarding her injuries, and did not introduce any evidence regarding Ms. Miller's injuries.
This evidence demonstrates that Ms. Miller suffered significant physical and emotional injuries that caused her pain and suffering and required hospitalization. The State's evidence was positive as to Defendant's infliction of serious injury upon Ms. Miller, and there was no conflicting evidence introduced at trial regarding the serious nature of Ms. Miller's injuries. Therefore, the trial court was not required to submit the lesser-included offense to the jury. See Leroux, 326 N.C. at 378, 390 S.E.2d at 322; Hurley, 180 N.C. App. at 683, 637 S.E.2d at 922. We hold that the trial court did not err or commit plain error in failing to instruct the jury on the offense of assault with a deadly weapon. Defendant's assignment of error is overruled.
Defendant also argues that the trial court erred by failing to instruct the jury on the lesser-included offense of assault inflicting serious injury. Defendant has only assigned error to the trial court's failure to instruct the jury on assault with a deadly weapon, and has not assigned error to the trial court's failure to instruct the jury on assault inflicting serious injury. We therefore are unable to review Defendant's argument. See N.C.R. App. P. 10(a).

V.
Finally, Defendant assigns error to the trial court's failure to instruct the jury on the offenses of common-law robbery and larceny as lesser-included offenses of robbery with a dangerous weapon. Defendant did not object to the trial court's jury instructions at trial, and we therefore review the trial court's jury instructions for plain error.
We first consider Defendant's argument regarding common-law robbery. Common-law robbery is defined as the "non-consensual taking of money or personal property from the person or presence of another by means of violence or fear." State v. Smith, 305 N.C. 691, 700, 292 S.E.2d 264, 270, cert. denied, 459 U.S. 1056, 74 L. Ed. 2d 622 (1982). "The critical difference between armed robbery [under N.C. Gen. Stat. § 14-87(a)] and common law robbery is that the former is accomplished by the use or threatened use of a dangerous weapon," while "[t]he use or threatened use of a dangerous weapon is not an essential element of common law robbery." State v. Peacock, 313 N.C. 554, 562, 330 S.E.2d 190, 195 (1985). The trial court was therefore required to submit a common-law robbery charge to the jury if there was conflicting evidence regarding whether Defendant used a dangerous weapon when he robbed Ms. Miller.
The State's evidence at trial demonstrated that Defendant robbed Ms. Miller by first colliding into her with a PT Cruiser vehicle. As discussed in Part I above, the PT Cruiser, as used by Defendant in the commission of the robbery, was a deadly weapon as a matter of law. Further, as discussed in Part III above, the State's evidence demonstrated that Defendant's use of the PT Cruiser directly induced Ms. Miller to part with her purse. Defendant's evidence at trial did not contradict the State's evidence that the PT Cruiser was used as a dangerous weapon. Rather, Defendant's evidence tended to show that Defendant was not the perpetrator of the offense.
Because the State's evidence was positive as to Defendant's use of the PT Cruiser as a dangerous weapon, and because there was no conflicting evidence introduced at trial regarding the use of the PT Cruiser to effectuate the taking of Ms. Miller's purse, the trial court was not required to submit the lesser-included offense of common-law robbery to the jury. See Leroux, 326 N.C. at 378, 390 S.E.2d at 322; Hurley, 180 N.C. App. at 683, 637 S.E.2d at 922.
We next consider Defendant's argument regarding larceny. Larceny is defined as "the taking by trespass and carrying away of the goods or personal property of another, without the owner's consent and with the intent [to] permanently . . . deprive the owner of the property and to convert it to the taker's own use." State v. Fluker, 139 N.C. App. 768, 777, 535 S.E.2d 68, 74 (2000). While "[b]oth crimes involve an unlawful and willful taking of another's personal property[,] . . . armed robbery is an aggravated form of larceny." State v. White, 322 N.C. 506, 516, 369 S.E.2d 813, 818 (1988).
The primary difference between robbery with a dangerous weapon and larceny is that larceny merely requires an unlawful taking, while robbery with a dangerous weapon requires that the Defendant commit the unlawful taking by use of a dangerous weapon, thereby threatening or endangering the life of the victim. As discussed above, the State's evidence was positive as to Defendant's use of the PT Cruiser as a dangerous weapon, and there was no conflicting evidence introduced at trial regarding the use of the PT Cruiser to effectuate the taking of Ms. Miller's purse. Further, the serious nature of the injuries Ms. Miller sustained in the collision demonstrate that Ms. Miller's life was endangered due to Defendant's use of the PT Cruiser during the commission of the robbery. Therefore, the trial court was not required to submit the lesser-included offense of larceny to the jury. See Leroux, 326 N.C. at 378, 390 S.E.2d at 322; Hurley, 180 N.C. App. at 683, 637 S.E.2d at 922. Defendant's assignment of error is overruled.
No error.
Judges ELMORE and JACKSON concur.
Report per Rule 30(e).