STATE OF NORTH CAROLINA v. VONZELL SPEIGHT

No. COA10-1467

(Filed 21 June 2011)

**1. Confessions and Incriminating Statements— defendant's verbal statement after arrest—not prejudicial**

The trial court did not err in a sexual offense, kidnapping, robbery with a dangerous weapon, burglary, communicating threats, and assault with a deadly weapon case by allowing a witness to testify to defendant's verbal statement made after defendant was arrested. Even if the statement was erroneously admitted, defendant failed to show that the exclusion of the statement could have changed the result of the case.

**2. Indictment and Information— first-degree burglary—not fatally defective—sufficiently clear**

An indictment charging defendant with first-degree burglary was not fatally defective or insufficient to support the trial court's

imposition of a consecutive sentence. The indictment's stated felonious intent of "unlawful sexual acts" informed defendant of the charge against him with sufficient clarity to withstand dismissal and did not allow the jury to convict him on alternative theories of felonious intent.

**3. Robbery— dangerous weapon—sufficient evidence— motion to dismiss properly denied**

The trial court did not err in a robbery with a dangerous weapon case by denying defendant's motion to dismiss the charge. The State offered sufficient evidence that defendant took personal property from the victim by the use or threatened use of a knife.

**4. Robbery— dangerous weapon—jury instruction—lesser-included offense—not warranted**

The trial court did not err in a robbery with a dangerous weapon case by refusing to charge the jury on the lesser-included offense of common law robbery. All the evidence indicated that defendant removed property from the victim's apartment after she was awake and while her life was being threatened by defendant's use of a knife, a deadly weapon.

**5. Sexual Offenses— first-degree—jury instruction—lesser-included offense—not warranted**

The trial court did not err in a first-degree sexual offense case by denying defendant's request to charge the jury on the lesser-included offense of second-degree sexual offense. There was no evidence to support instruction on the lesser-included offense.

Appeal by defendant from judgment entered 15 July 2010 by Judge Kenneth C. Titus in Durham County Superior Court. Heard in the Court of Appeals 27 April 2011.

*Attorney General Roy Cooper, by Assistant Attorney General Elizabeth J. Weese, for the State.*

*William D. Spence for defendant-appellant.*

BRYANT, Judge.

Because the admission of defendant's statement to police did not prejudice the jury's verdict, defendant is not entitled to a new trial. Because the indictment for first-degree burglary was not fatally defec-

tive, we do not arrest judgment on defendant's conviction for that charge. Because there was substantial evidence to convict defendant of robbery with a dangerous weapon, the trial court properly denied defendant's motion to dismiss. And, because there was insufficient evidence to warrant offering the jury an instruction on the lesser included offense of second-degree sexual offense, the trial court properly denied defendant's request. Accordingly, we hold no error.

On 5 May 2008, defendant Vonzell Speight was indicted on charges of first-degree sexual offense, second-degree kidnapping, robbery with a dangerous weapon, first-degree burglary, communicating threats, and assault with a deadly weapon. A jury trial commenced in Durham County Superior Court on 12 July 2010. The evidence presented tended to show the following. On 16 April 2008, Catherine Lamas[1] lived in a one bedroom apartment on Dacian Street in Durham. She went to bed at 11:00 p.m. that night, and because there had been an attempted break-in at her complex earlier that week, she made sure her doors and windows were locked. At 4:40 a.m., Catherine awoke to find a man on top of her holding a knife to her throat. She attempted to fight him off, but he pressed her down onto the bed. While attempting to get the knife away from her throat, Catherine cut her palms. Though it was dark, her eyes adjusted, and Catherine could see the man clearly. He was not wearing a mask, and he leaned close to her face to whisper. He was an African-American male, 5'7" or 5'8", in his mid-to-late thirties, he was a little overweight and carried it in his stomach, and he had a little facial hair. He wore light colored blue jeans without a belt; he wore a grey Lee sweatshirt inside out, with a t-shirt under it; and his sneakers were white, had big tongues, fat laces, and were not well tied. The man told her to make no noise or she would be killed. Though she could feel the knife at her throat, Catherine began to talk. Over the next hour-and-a-half, Catherine convinced the man that she had no more cash in her apartment other than the $7.00 or $8.00 he took out of her purse before she woke up, and no valuables. After not finding any significant amounts of money and not seeing any valuables in the apartment, Catherine believed the man was getting upset. When she stated that he could take anything he wanted, he stated that he could take her. Catherine pleaded with him not to rape her and over the next thirty minutes negotiated with him about what acts she would or would not perform. She also encouraged him to put the knife down, which he did. Though still on top of her, restraining her, the man demanded that Catherine

---

1. A pseudonym has been used to protect the victim's identity.

remove her clothes. Catherine pleaded with him not to hurt her. She reached for a cup of water she had nearby, took a drink, and handed the water to her assailant. When he took the cup, Catherine jumped from the bed and attempted to get to her front door; however, the man caught her by her hair, and using the knife, pressed her back onto the bed. He performed oral sex on her, inserting his tongue into her vagina. He then told her he would leave but that he had to tie her up. Catherine convinced him that she would not call the police and there was no need to tie her up. The man picked up a sports bra and used it to wipe off the knife and the door handle on the rear door. Catherine heard him exit the apartment and enter a back alley. After his exit, Catherine left the apartment through the front door and called the police. She was taken to a hospital where a rape kit was performed, and she spoke to a police investigator.

Police later found a knife and a blue sports bra in the alley behind Catherine's apartment. Catherine identified the knife as a medium sized knife from her kitchen that she used to dice vegetables. A crime scene investigator was able to take six latent fingerprints off of the cup next to Catherine's bed. The prints were submitted to a law enforcement database and the results indicated that defendant Vonzell Speight was a possible suspect.

On 24 April 2008, Jolanda Clayton, a Corporal with the Durham Police Department, aided in arresting defendant. Corporal Clayton testified over objection that after his arrest, defendant was told what he was charged with and he responded by stating, "Man, I'm a B and E guy."

A forensic DNA analyst, with the State Bureau of Investigation, admitted as an expert in the forensic analysis of DNA, compared the swabs taken from Catherine during the processing of her rape kit examination and blood samples taken from defendant and determined that defendant's DNA could not be excluded as a contributor to the mixture of bodily fluids collected.

At trial, Catherine identified defendant as the man who was in her apartment that night. Catherine further testified that she never gave defendant permission to enter her apartment or take her money or personal items.

The trial court instructed the jury on the charges of first-degree sexual offense, second-degree kidnapping, robbery with a dangerous weapon, first-degree burglary, communicating threats, and assault with a deadly weapon. The jury found defendant guilty on all charges.

The trial court arrested judgment on the charge of second-degree kidnapping, and the State dismissed the charge of attaining the status of habitual felon. The trial court then entered judgment and commitment sentencing defendant to a term of 480 to 585 months for first-degree sexual offense and a term of 146 to 185 months for the consolidated offenses of robbery with a dangerous weapon, first-degree burglary, communicating threats, and assault with a deadly weapon. Both terms were to be served consecutively. Defendant appeals.

---

On appeal, defendant raises the following issues: Whether the trial court erred in (I & I.A.) allowing Corporal Clayton to testify to defendant's verbal statement made after his arrest; (II) failing to dismiss the charge of first-degree burglary on the basis of a fatally defective indictment; (III) failing to dismiss the charge of robbery with a dangerous weapon; and refusing to charge the jury with the lesser included offenses of (IV) common law robbery and (V) second-degree sex offense.

*I*

[1] Defendant first argues the trial court erred in allowing Corporal Clayton to testify that after defendant was arrested and informed of the charges against him, he stated, "Man, I'm a B and E guy." Defendant contends that it was error to allow the State to introduce evidence of defendant's bad character during its case-in-chief when the evidence served no purpose other than to show defendant's character and his disposition to commit criminal acts. We disagree.

We note that a warrant for defendant's arrest included the charge for first-degree burglary.

> Common law burglary is defined as the breaking and entering of a dwelling house of another in the nighttime with the intent to commit a felony therein. *State v. Cooper*, 288 N.C. 496, 219 S.E. 2d 45 (1975). Burglary in the first degree occurs when the crime is committed while the dwelling house or sleeping apartment is actually occupied by any person. N.C.G.S. § 14-51 (1981).

*State v. Williams*, 314 N.C. 337, 355, 333 S.E.2d 708, 720 (1985).

During the State's case-in-chief, the prosecutor presented Durham police officer Corporal Clayton, who aided in arresting defendant. Corporal Clayton testified over objection that after his arrest, defendant was told of the charges against him and responded by stating, "Man, I'm a B and E guy." Under these circumstances, defendant's

statement may be viewed as a statement against penal interest pursuant to N.C. Gen. Stat. § 8C-1, Rule 804(b)(3).[2]

However, even presuming it was error to admit defendant's statement to police in violation of the prohibition against the admission of "[e]vidence of a person's character or a trait of his character . . . for the purpose of proving that he acted in conformity therewith on a particular occasion[,]" N.C.R. Evid. 404(a), the admission that defendant was "a B and E guy" did not prejudice defendant and was not reversible error.

The jury heard Catherine's testimony recounting how she checked to make sure the windows and doors of her apartment were locked, how she awoke to find a man on top of her with a knife to her throat, and the near hour-and-a-half she spent in the presence of her assailant. Further, they heard Catherine identify defendant as her assailant; heard that based on fingerprint analysis defendant was a possible suspect; and that defendant's DNA could not be excluded from the mixture of fluids taken during Catherine's rape kit examination. Defendant has failed to show that the exclusion of his statement to police, that he was "a B and E guy," could have changed the result of his case. Accordingly, defendant's argument is overruled.

*I.A.*

Defendant further contends that the trial court's admission of Corporal Clayton's testimony amounted to plain error on the basis that it was substantially more prejudicial than probative in violation of our Rules of Evidence, Rule 403. However, as stated in I, *supra*, defendant has failed to establish that the admission of his statement to police, that he was "a B and E guy" was prejudicial. Therefore, such cannot amount to plain error. Accordingly, this argument is overruled.

*II*

[2] Defendant next argues that the indictment charging first-degree burglary was fatally defective and insufficient to support the trial court's imposition of a consecutive sentence. Defendant contends

---

2. N.C.G.S. § 8C-1, Rule 804(b)(3) (2009). "A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability is not admissible in a criminal case unless corroborating circumstances clearly indicate the trustworthiness of the statement."

that the indictment and subsequent jury charge erroneously allowed the jury to convict defendant for first-degree burglary based on (A) an intent to commit a non-specific "unlawful sexual act" or "sexual offense" and (B) a theory of alternative underlying felonies: felony larceny; armed robbery; or "sexual offense." We disagree.

Where an indictment "wholly fails to charge some offense . . . cognizable at law or fails to state some essential and necessary element of the offense of which the defendant is found guilty[,]" the verdict of the jury is vulnerable to a motion to arrest judgment. *State v. Patterson*, 194 N.C. App. 608, 612, 671 S.E.2d 357, 360 (2009) (citation omitted); *State v. Gregory*, 223 N.C. 415, 418, 27 S.E.2d 140, 142 (1943) (citations omitted).

### A

Defendant contends that the indictment for first-degree burglary was fatally defective because it asserted that defendant intended to commit "unlawful sexual acts" as the predicate felony.

Under North Carolina General Statutes, section 15A-924,

> [a] criminal pleading must contain . . . [a] plain and concise factual statement in each count which, without allegations of an evidentiary nature, asserts facts supporting every element of a criminal offense and the defendant's commission thereof with sufficient precision clearly to apprise the defendant or defendants of the conduct which is the subject of the accusation.

N.C. Gen. Stat. § 15A-924(a)(5) (2009). In *State v. Worsley*, 336 N.C. 268, 443 S.E.2d 68 (1994), the defendant alleged that the indictment charging him with first-degree burglary was fatally defective because it failed to specify the felony he intended to commit when he broke into the victim's apartment. *Id.* at 279, 443 S.E.2d at 73. Our Supreme Court held that the indictment satisfied the requirements of § 15A-924(a)(5).

> As in [*State v. Freeman*, 314 N.C. 432, 333 S.E.2d 743 (1985)], "the indictment here charges the offense . . . in a plain, intelligible, and explicit manner and contains sufficient allegations to enable the trial court to proceed to judgment and to bar a subsequent prosecution for the same offense." *Freeman*, 314 N.C. at 436, 333 S.E.2d at 746. The indictment "also informs the defendant of the charge against him with sufficient certainty to enable him to pre-

pare his defense." *Id*. If the defendant in the case at bar was in fact "in need of further factual information," he need only have moved for a bill of particulars pursuant to N.C.G.S. § 15A-925. *Freeman*, 314 N.C. at 436-37, 333 S.E.2d at 746.

*Id*. at 281, 443 S.E.2d at 74.

Here, the indictment's stated felonious intent of "unlawful sexual acts" informs defendant of the charge against him with sufficient clarity to withstand dismissal. Defendant cites *State v. Cooper*, 288 N.C. 496, 219 S.E.2d 45 (1975), in support of his argument that the indictment is fatally defective; however, in *Worsley*, the Court specifically acknowledged *Cooper* and noted that it was decided prior to the enactment of § 15A9-24(a)(5). *Worsley*, 336 N.C. at 279, 443 S.E.2d at 73. Therefore, defendant's argument is overruled.

*B*

Defendant also argues that the indictment and jury instruction allowed the jury to convict him on alternative theories of felonious intent: allowing for a non-unanimous verdict regarding the theory upon which the jury found defendant guilty.

In *State v. Jordan*, 305 N.C. 274, 287 S.E.2d 827 (1982), our Supreme Court considered virtually the same argument as defendant raises in the instant case: whether the disjunctive use of "rape and/or first-degree sexual offense" in an indictment rendered it fatally defective.

[The] [d]efendant [Jordan] contends that the use of the disjunctive in describing the requisite intent for burglary created the possibility that less than all the jurors could agree which felony the defendant intended to commit although they might all agree that defendant did have the intent to commit one of the felonies and convict him of burglary.

*Id*. at 279, 287 S.E.2d at 831. The Court was not persuaded and overruled the argument. *Id*. For the reasons stated in *Jordan*, defendant's argument is overruled.

*III*

**[3]** Next, defendant argues that the trial court erred in denying his motion to dismiss the charge of robbery with a dangerous weapon. Defendant contends the State "failed to offer sufficient substantial evidence that [defendant] took personal property from the victim by the use or threatened use of a knife." We disagree.

"Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Powell,* 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980) (citations omitted).

> "Under N.C.G.S. § 14-87(a), robbery with a dangerous weapon is: '(1) the unlawful taking or an attempt to take personal property from the person or in the presence of another (2) by use or threatened use of a firearm or other dangerous weapon (3) whereby the life of a person is endangered or threatened.' " *State v. Olson,* 330 N.C. 557, 566, 411 S.E.2d 592, 597 (1992) (quoting *State v. Beaty,* 306 N.C. 491, 496, 293 S.E.2d 760, 764 (1982), *overruled on other grounds by State v. White,* 322 N.C. 506, 369 S.E.2d 813 (1988)); *see* N.C.G.S. § 14-87 (1993). " 'Force or intimidation occasioned by the use or threatened use of firearms, is the main element of the offense.' " *State v. Beaty,* 306 N.C. at 496, 293 S.E.2d at 764 (quoting *State v. Mull,* 224 N.C. 574, 576, 31 S.E.2d 764, 765 (1944)).

*State v. Cummings,* 346 N.C. 291, 325, 488 S.E.2d 550, 570 (1997).

Defendant cites *State v. Richardson,* 308 N.C. 470, 302 S.E.2d 799 (1983), *Powell,* 299 N.C. 95, 261 S.E.2d 114, and *State v. Dalton,* 122 N.C. App. 666, 471 S.E.2d 657 (1996), in support of his argument. However, we find these cases inapposite. In *Richardson,* our Supreme Court reversed the trial court's denial of the defendant's motion to dismiss the charge of robbery with a dangerous weapon. *Richardson,* 308 N.C. at 472, 302 S.E.2d at 801. The evidence indicated that the defendant attacked the victim with a club; the victim threw his duffel bag at the defendant with the hope of protecting himself and slowing his assailant down; but the victim never thought that the defendant wanted the bag or its contents. *Id.* at 474-75, 302 at 802.

In *Powell,* the defendant had been convicted of first-degree murder, first-degree rape, and robbery with a dangerous weapon; however, in the light most favorable to the State, the evidence indicated that at the time the personal property was taken, the victim was no longer alive. As a result, there could be no inference that the defendant removed the items by use of a dangerous weapon. *Powell,* 299 N.C. at 102, 261 S.E.2d at 119. Our Supreme Court reversed the conviction for robbery with a dangerous weapon. *Id.*

In *Dalton*, the defendant entered the residence of a woman who was asleep on a sofa. While the woman remained asleep, the defendant searched the residence and removed $300.00 to $400.00, jewelry, and other valuables. *Dalton*, 122 N.C. App. at 669, 471 S.E.2d at 659. The defendant then left the residence only to return. The woman awoke to find the defendant sitting on top of her, trying to remove her pants, and threatening her with a knife he found on the kitchen counter. *Id.* This Court reversed the defendant's conviction for robbery with a dangerous weapon because there was no evidence the victim was threatened with a dangerous weapon at the time the defendant removed the valuables from her home. *Id.* at 671-72, 471 S.E.2d at 661.

The facts in the instant case are clearly distinguishable. On 17 April 2008, Catherine awoke at approximately 4:40 a.m. to find defendant on top of her holding a knife to her throat. After struggling with him and cutting her palms as a result, she pleaded and negotiated with him for almost an hour and a half. During the confrontation, defendant acknowledged that he had already taken money from Catherine's purse. But, when defendant fled Catherine testified that he took a knife from her kitchen, that just before he left he took her sports bra, and that she never saw her purse again. These facts are sufficient to support a conclusion that defendant unlawfully took Catherine's property from her presence by the use or threatened use of a knife and thereby, Catherine's life was endangered. *See Cummings*, 346 N.C. at 325, 488 S.E.2d at 570. Accordingly, defendant's argument is overruled.

## IV

[4] Next, defendant argues that the trial court erred in refusing to charge the jury on the lesser included offense of common law robbery. Defendant contends, as noted in Issue III, that because the evidence establishes Catherine's property was taken while she was asleep and no deadly weapon was used to facilitate the taking, the trial court erred in denying defendant's request for an instruction on the lesser included offense. We disagree.

A trial court must give instructions on all lesser-included offenses that are supported by the evidence, even in the absence of a special request for such an instruction; and the failure to so instruct constitutes reversible error that cannot be cured by a verdict finding the defendant guilty of the greater offense. *See State v. Montgomery*, 341 N.C. 553, 567, 461 S.E.2d 732, 739

(1995); *State v. Whitaker*, 316 N.C. 515, 520, 342 S.E.2d 514, 518 (1986). The trial court may refrain from submitting the lesser offense to the jury only where the "evidence is clear and positive as to each element of the offense charged" and no evidence supports a lesser-included offense. [*State v. Peacock*, 313 N.C. 554, 558, 330 S.E.2d 190, 193 (1985)].

*State v. Lawrence*, 352 N.C. 1, 19, 530 S.E.2d 807, 819 (2000).

The critical difference between armed robbery and common law robbery is that the former is accomplished by the use or threatened use of a dangerous weapon whereby the life of a person is endangered or threatened. *State v. Coats*, 301 N.C. 216, 270 S.E. 2d 422 (1980); *State v. Joyner*, 295 N.C. 55, 243 S.E. 2d 367 (1978). The use or threatened use of a dangerous weapon is not an essential element of common law robbery. *State v. Moore*, 279 N.C. 455, 183 S.E. 2d 546 (1971).

*Peacock*, 313 N.C. at 562-63, 330 S.E.2d at 195. All the evidence in the instant case indicates that defendant removed property from Catherine's apartment after she was awake and while her life was being threatened by defendant's use of a knife, a deadly weapon. As such, there was no evidence to support the instruction of a lesser included offense. Accordingly, defendant's argument is overruled.

*V*

[5] Finally, defendant argues the trial court erred by denying his request to charge the jury on the lesser included offense of second-degree sexual offense. We disagree.

Under North Carolina General Statutes, section 14-27.4(a),

A person is guilty of a sexual offense in the first degree if the person engages in a sexual act:

. . .

(2) With another person by force and against the will of the other person, and:

a. Employs or displays a dangerous or deadly weapon or an article which the other person reasonably believes to be a dangerous or deadly weapon . . . .

N.C. Gen. Stat. § 14-27.4(a)(2)(a.) (2009). Pertinent to this issue, second-degree sexual offense differs from first-degree sexual offense in

that second-degree sexual offense lacks the element of the use of a deadly weapon. *See State v. Barnette*, 304 N.C. 447, 466, 284 S.E.2d 298, 309 (1981); *compare* N.C.G.S. § 14-27.4 and § 14-27.5 (2009).

Here, Catherine testified that when she jumped from the bed and attempted to get to her front door, defendant caught her by her hair, and using the knife, pressed her back onto the bed. There he performed oral sex on her, inserting his tongue into her vagina. On cross-examination, Catherine was asked where the knife was while defendant was performing oral sex on her. She responded, "It was in his possession." As there was no evidence to support the instruction of a lesser included offense, defendant's argument is overruled.

No error.

Judges HUNTER, Robert C., and McCULLOUGH concur.