STATE OF NORTH CAROLINA v. CALVIN EUGENE PEACOCK

No. 307A84

(Filed 4 June 1985)

1. **Burglary and Unlawful Breakings § 7— burglary—ambiguous evidence of intent to commit larceny—instruction on misdemeanor breaking and entering required**

The trial court erred by not instructing the jury on the lesser-included offense of misdemeanor breaking and entering where there was some evidence which may have convinced a rational trier of fact that defendant did not form the requisite intent to commit larceny at the time he broke and entered the deceased's apartment in that his statement to police indicates that he consumed LSD and large quantities of alcohol, was hallucinating in his room just prior to the crime, thought about going down to talk with his landlady about the rent, kicked her door and broke the glass and moldings when she wouldn't answer, reached inside and unlocked the door, went in and stood in the living room thinking about robbing her, saw a vase, picked it up and went to her bedroom, and began to hit her with the vase. The detective who transcribed defendant's statement testified that defendant told him that it was after he was inside that he decided to rob the landlady, there was evidence that defendant owed the landlady four weeks rent, and the evidence discloses that defendant noticed and picked up the vase only after he broke into the apartment. G.S. 15A-1232 (1983), G.S. 14-51.

2. **Robbery § 5.4— robbery with a dangerous weapon—glass vase dangerous weapon as used—no instruction on common law robbery—no error**

The trial court did not err by instructing the jury on robbery with a dangerous weapon but not on the lesser-included offense of common law robbery where defendant admitted that he used a vase to strike the victim's head, the uncontradicted evidence showed that the victim's life was endangered by defendant's use of a glass vase, defendant is a large man and the victim was an elderly female weighing only seventy-three pounds, the physician who performed the autopsy found three lacerations on her head which were created by a blunt force, the wounds were three-fourths of an inch in length and her scalp was torn down to the skull with bleeding over the brain beneath those wounds, the blows the victim suffered were sufficient to have rendered her unconscious, and the police found slivers of white glass on her body and

State v. Peacock

throughout the room. The only reasonable inference was that the glass vase as used by defendant was a dangerous weapon. G.S. 14-87(a) (1981).

**3. Constitutional Law § 63; Criminal Law § 135.3— exclusion of jurors opposed to death penalty—no error**

There was no error in "death qualifying" the jury prior to the guilt phase of the trial.

APPEAL by defendant from judgments entered 22 March 1984 by *Cornelius, J.,* at a two-week Criminal Session of Superior Court, GUILFORD County, which began 12 March 1984.

Defendant was charged in indictments, proper in form, with first degree murder, first degree burglary, and robbery with a dangerous weapon.

Evidence for the State tended to show that on the morning of 5 November 1983 Jeffrey Wilson Kelly went to visit a friend at the boarding house operated by the victim, Lizzie Mabel Frye. Upon entering the house he noticed that the door to Mrs. Frye's apartment had been "beat in." He entered the apartment and discovered Mrs. Frye's body on her bed. He called the police. When the police entered Mrs. Frye's bedroom, they noticed slivers of white glass on Mrs. Frye's corpse, her bed, and the bedroom floor. The bedroom was in general disarray, and Mrs. Frye's clothing was torn.

Defendant, a resident of the boarding house, arrived there sometime after the police had begun their investigation of the crime scene. When defendant identified himself as a resident of the house, a police detective requested that he go to the police station to be interviewed concerning Mrs. Frye's death. Defendant agreed and the police drove him to the station in a police car. At the station defendant was advised of his rights pursuant to *Miranda v. Arizona,* 384 U.S. 436 (1966). Defendant executed a waiver of his *Miranda* rights and made an exculpatory statement to police.

After defendant gave his statement, the interviewing officer, Detective Edward Lee Hill, noticed two white hairs on defendant's dark sweater. Hill removed the hairs from the sweater, left the interviewing room and gave them to another officer. The detective returned to the room about ten minutes later and said to defendant, "You need to tell me about killing Mrs. Frye. If you

did kill her and if you made a mistake, you need to tell me about it."

Defendant hung his head and said, "If I tell you, will you help me with my drug and alcohol problem?"

Detective Hill then told defendant that he could not help him but that he would advise defendant's attorneys about the problem and that perhaps they would get him help. Defendant then made an inculpatory statement which Detective Hill reduced to writing. Defendant made some minor corrections and signed the written version of his statement. He then gave officers permission to search a motel room he had stayed in the night before and showed them where he had discarded the victim's money pouch.

Detective Hill was permitted to read the written version of defendant's statement to the jury. The statement was, in pertinent part, as follows:

> I went to my room and I started to trip on the acid. I remember laying on my bed for a while. I remember seeing colors and shit like that. I remember thinking about going down and talking to Mrs. Frye about the rent. I then went downstairs and started banging on her door. It was about eleven forty-five p.m. She wouldn't come to the door. I keeped [sic] banging on the door, and then I kicked the door and the glass broke. The moulding around the glass broke and fell off.

> I pulled the moulding the rest of the way from around the window, and some glass fell out. I reached in and unlocked the door. I went on in and I was standing there in the living room and I was thinking about robbing Mrs. Frye. I had heard Mrs. Frye say that she got her check the first of the month. I had seen Mrs. Frye with a pouch around her neck on a chain, or sometimes it would be pinned on the inside of her shirt.

> When I was standing in the living room, I hadn't seen Mrs. Frye yet. I saw a vase in the living room and I picked it up. I walked to the doorway and stood there thinking about robbing Mrs. Frye. My head started hurting real bad. I then stepped into her bedroom and Mrs. Frye sat up on the side of the bed. I then hit her in the head with the vase.

On cross-examination counsel for defendant asked Detective Hill the following question: "The only statement he [defendant] made is that after he was in there, he decided to rob her; isn't that correct?" Detective Hill answered, "That's the statement he gave me."

A pathologist testified that Mrs. Frye died from multiple injuries, the most serious of which were broken ribs which interfered with her breathing.

Defendant offered no evidence at trial.

Defendant requested instructions on misdemeanor breaking or entering, a lesser included offense of burglary. He also requested an instruction on common law robbery, a lesser included offense of armed robbery. The trial court denied these requests and instructed the jury that it could convict defendant of first degree murder on the basis of premeditation or on the basis of felony murder upon the underlying offense of burglary.

The jury found defendant guilty of burglary, armed robbery and first degree murder on the theory of felony murder, and the trial court merged the murder and first degree burglary convictions. In a separate sentencing hearing, the jury recommended a sentence of life imprisonment for the murder conviction. The trial judge accordingly sentenced the defendant to life imprisonment for the murder and to forty years imprisonment for the armed robbery. We allowed defendant's motion to bypass the Court of Appeals as to the robbery on 7 November 1984.

*Lacy H. Thornburg, Attorney General, by Christopher P. Brewer, Assistant Attorney General, for the State.*

*Adam Stein, Appellate Defender, by Malcolm Ray Hunter, Jr., First Assistant Appellate Defender, for defendant-appellant.*

BRANCH, Chief Justice.

[1] Defendant assigns as error the trial court's denial of his request for a jury instruction on the crime of misdemeanor breaking or entering, a lesser included offense of first degree burglary. Defendant's indictment for first degree burglary was based on the theory that he broke and entered with an intent to commit larceny within. Despite his request for an instruction on the lesser

offense, the trial judge instructed the jury that it could find the defendant guilty of first degree burglary or not guilty.

The common law offense of burglary is committed when a person breaks or enters into the dwelling house or sleeping apartment of another in the nighttime with the intent to commit a felony therein. *State v. Cooper*, 288 N.C. 496, 219 S.E. 2d 45 (1975). A person is guilty of first degree burglary when the crime is committed while any person is in "actual occupation" of the dwelling house or sleeping apartment. N.C. Gen. Stat. § 14-51 (1981). In the instant case, if defendant had committed all of the other elements of first degree burglary but had not intended to commit larceny at the time of the breaking and entering, he would be guilty of misdemeanor breaking or entering. *See State v. Faircloth*, 297 N.C. 388, 255 S.E. 2d 366 (1979).

It is defendant's contention that his statement to police, which the State introduced into evidence, contained some evidence which would support a charge on the lesser offense since portions of the statement tended to negate the element of felonious intent.

It is well established that a judge must declare and explain the law arising upon the evidence. N.C. Gen. Stat. § 15A-1232 (1983). This duty necessarily requires a judge to charge upon a lesser included offense, even absent a special request, where there is evidence to support it. *State v. Wright*, 304 N.C. 349, 283 S.E. 2d 502 (1981). "The sole factor determining the judge's obligation to give such an instruction is the presence, or absence, of any evidence in the record which might convince a rational trier of fact to convict the defendant of a less grievous offense." *Id.* at 351, 283 S.E. 2d at 503. *See State v. Redfern*, 291 N.C. 319, 230 S.E. 2d 152 (1976).

Where the State's evidence is clear and positive as to each element of the offense charged and there is no evidence showing the commission of a lesser included offense, it is not error for the judge to refuse to instruct on the lesser offense. *State v. Hardy*, 299 N.C. 445, 263 S.E. 2d 711 (1980).

It is clear that when considered in the light most favorable to the State, there was sufficient evidence to submit the greater offense of first degree burglary to the jury. Evidence tending to

show that defendant had the requisite intent was the fact that the defendant was wearing gloves at the time of the robbery, that he knew where the victim kept her money and that she was supposed to have received a check in the mail on the first of the month. Defendant also concedes that there was evidence that he committed larceny once inside the deceased's apartment. We have held that such evidence is some evidence of intent at the time of the break-in, although it is not positive proof. *State v. Tippett*, 270 N.C. 588, 155 S.E. 2d 269 (1967). A breaking or entering into a building without the intent to commit a felony "is not converted into burglary by the subsequent commission therein of a felony subsequently conceived." *Id.* at 594, 155 S.E. 2d at 274. The presence of any evidence of guilt in the lesser degree is the determinative factor. *State v. Simpson*, 299 N.C. 377, 261 S.E. 2d 661 (1980); *State v. Griffin*, 280 N.C. 142, 185 S.E. 2d 149 (1971).

We believe there was some evidence in this case which may have convinced a rational trier of fact that defendant did not form the requisite intent to commit larceny at the time he broke and entered the deceased's apartment. His statement to police indicates that after consuming LSD and large quantities of alcohol, he was hallucinating in his room just prior to the crime. At that time he remembered "thinking about going down and talking to Mrs. Frye about the rent. I then went downstairs and started banging on her door." When Mrs. Frye "wouldn't come to the door" defendant kicked the door, breaking the glass and molding on the door and then pulled more molding away from the door. He reached inside at that point and unlocked it. Defendant stated that he "went on in and I was standing there in the living room and I was thinking about robbing Mrs. Frye." At that point defendant saw a vase inside the apartment, picked it up and proceeded to the bedroom where he began to hit Mrs. Frye with the vase.

Defendant's statement that he "was standing there [in the living room] thinking about robbing Mrs. Frye" is at best ambiguous with regard to the question of when he formed an intent to commit larceny. We note, however, that Detective Hill, who transcribed defendant's oral statement, testified on cross-examination that defendant told him that it was *after* he was inside that he decided to rob Mrs. Frye. Detective Hill's interpretation of what defendant said lends credence to defendant's argument that a

juror might also infer that he broke and entered without an intent to commit larceny.

Of more significance is defendant's statement that he went to Mrs. Frye's apartment intending to talk about the rent he owed her. The evidence was that he indeed owed Mrs. Frye four weeks' rent and that she had confronted him earlier in the evening about that back rent. When Mrs. Frye had confronted him, defendant informed her that he would talk to her about the rent later. This evidence lends support to defendant's statement about his purpose in going to his landlady's apartment later that night. Defendant's actions in breaking into the apartment after Mrs. Frye failed to answer the door are concededly not consistent with behavior normally associated with a tenant attempting to resolve an issue of back rent with a landlord. Nonetheless, we believe that a rational trier of fact could find that behavior attributable to drug and alcohol abuse rather than to an intent to commit a felony. This Court has found that evidence of a defendant's drunkenness at the time of a breaking and entering may require an instruction on the lesser included offense of misdemeanor breaking or entering in addition to an instruction on burglary. *State v. Feyd*, 213 N.C. 617, 197 S.E. 171 (1938). Finally, we note that the evidence discloses that it was only after defendant broke into Mrs. Frye's apartment that he noticed and picked up the glass vase he used to strike her. This evidence is further support for defendant's contention that a trier of fact could find that defendant's decision to commit larceny occurred only after he entered Mrs. Frye's apartment.

We find precedent for defendant's argument in *State v. Worthey*, 270 N.C. 444, 154 S.E, 2d 515 (1967). In *Worthey* the defendant was discovered by police inside a building used as a locker room and washroom by employees of Swift & Company. The screen on two windows of the building had been torn away. At trial defendant testified that he had gone inside the building to meet an employee of the company named Robert who was going to give him a ride. The evidence showed that there was no person named Robert employed with the company. In holding that the trial court erred in refusing to instruct on misdemeanor breaking or entering as a lesser included offense of felonious breaking or entering, this Court stated:

The evidence as to defendant's intent was circumstantial and did not point unerringly to an intent to commit a felony; the jury might have found defendant guilty of a misdemeanor upon the evidence.

The court's failure to submit for jury consideration and decision whether the defendant was guilty of a misdemeanor was prejudicial error.

*Id.* at 446, 154 S.E. 2d at 516.

We believe the defendant's evidence in this case is more plausible than that in *Worthey*. Although the evidence in *Worthey* showed that no employee named Robert even existed, defendant in this case indeed had reason to speak with Mrs. Frye about his rent on the evening of her death.

We find support for defendant's position in *State v. Banks*, 295 N.C. 399, 245 S.E. 2d 743 (1978). *Banks* involved the question of the necessity of charging on assault upon a female, a lesser included offense of assault with intent to commit rape. The evidence tended to show that although the defendant in *Banks* rubbed his genitalia against the victim and forced her to perform oral sex, there was no evidence he actually attempted coition. This Court stated:

The factual element which distinguishes assault with intent to commit rape from assault upon a female is *intent* at the time of the assault, and when evidence of intent to commit rape is overwhelming or uncontradicted, it would not be error to submit only the greater offense. . . . Here, however, the factual issue which separates the greater offense from the lesser, *i.e.*, intent, is not susceptible to clear cut resolution. Under these circumstances, the trial judge should have submitted to the jury the lesser included offense of assault upon a female.

*Id.* at 416, 245 S.E. 2d at 754 (citations omitted).

As in *Banks*, we do not find the question of intent in this case susceptible to clear cut resolution. Since we conclude that a rational trier of fact could find that the drugged and intoxicated defendant did not form the intent to commit larceny before break-

ing and entering, we hold that the trial court prejudicially erred in failing to instruct on misdemeanor breaking or entering.

For the reasons stated, there must be a new trial on the charge of burglary. Since the burglary was the underlying offense of the first degree murder under the felony murder rule, it follows that there must also be a new trial on the charge of first degree murder.

[2] By his next assignment of error, defendant contends that in instructing the jury on robbery with a dangerous weapon, the trial court erred in denying his request for a jury instruction on the lesser included offense of common law robbery. The trial court instructed the jury that it could convict defendant of armed robbery if it found that the white glass vase found at the murder scene was a deadly weapon. Defendant argues that the description of the vase and the medical evidence adduced at trial were insufficient to support a finding that the vase was a deadly weapon. Defendant contends that since reasonable jurors might disagree as to whether the circumstances supported a finding that the vase was used as a deadly weapon, he was entitled to an instruction on the lesser offense.

We have held that where the uncontradicted evidence is positive and unequivocal as to each and every element of armed robbery, and there is no evidence supporting defendant's guilt of a lesser offense, the trial court does not err in failing to instruct the jury on the lesser included offense of common law robbery. *State v. Richardson*, 279 N.C. 621, 185 S.E. 2d 102 (1971).

Robbery with a deadly weapon is defined as the unlawful taking or attempted taking of personal property from another by "[a]ny person or persons who, having in possession or with the use or threatened use of any firearms or other dangerous weapon, implement or means, whereby the life of a person is endangered or threatened." N.C. Gen. Stat. § 14-87(a) (1981).

The critical difference between armed robbery and common law robbery is that the former is accomplished by the use or threatened use of a dangerous weapon whereby the life of a person is endangered or threatened. *State v. Coats*, 301 N.C. 216, 270 S.E. 2d 422 (1980); *State v. Joyner*, 295 N.C. 55, 243 S.E. 2d 367 (1978). The use or threatened use of a dangerous weapon is not an

essential element of common law robbery. *State v. Moore*, 279 N.C. 455, 183 S.E. 2d 546 (1971). In *State v. Alston*, 305 N.C. 647, 290 S.E. 2d 614 (1982), we stated:

> In determining whether evidence of the use of a particular instrument constitutes evidence of use of "any firearms or other dangerous weapon, implement or means" within the prohibition of G.S. § 14-87, the determinative question is whether the evidence was sufficient to support a jury finding that a person's *life* was in fact endangered or threatened [by the use of that instrument].

305 N.C. at 650, 290 S.E. 2d at 616.

Whether an instrument can be considered a dangerous weapon depends upon the nature of the instrument, the manner in which defendant used it or threatened to use it, and in some cases the victim's perception of the instrument and its use. *See, e.g., State v. Thompson*, 297 N.C. 285, 254 S.E. 2d 526 (1979); *State v. Funderburk*, 60 N.C. App. 777, 299 S.E. 2d 822, *disc. review denied*, 307 N.C. 699, 301 S.E. 2d 392 (1983).

Here the uncontradicted evidence shows that Mrs. Frye's life was endangered by defendant's use of the glass vase. Defendant admitted in his statement to police that he used the vase to strike Mrs. Frye's head. The evidence showed that defendant is a large man and that Mrs. Frye, an elderly female, weighed only seventy-three pounds. The physician who performed an autopsy upon Mrs. Frye's body found three lacerations on her head which were created by a blunt force of some kind. The wounds were three-fourths of an inch in length and her scalp was torn down to the skull with bleeding over the brain beneath those wounds. The physician testified that the blows Mrs. Frye suffered were sufficient to have rendered her unconscious. The police found slivers of white glass on Mrs. Frye's body and throughout the room. From the above, we believe that the only reasonable inference was that the glass vase as used by defendant was a dangerous weapon.

We find similarities between this case and *State v. Harmon*, 21 N.C. App. 508, 204 S.E. 2d 883, *cert. denied*, 285 N.C. 593, 205 S.E. 2d 724 (1974). In *Harmon* although no specific evidence was offered about a dangerous weapon, the Court of Appeals held that

the trial court did not err in failing to instruct upon a lesser included offense. There the evidence showed that a victim had been severely cut in the course of a robbery requiring nineteen stitches, and the Court of Appeals concluded that such an injury could not have been inflicted except by use of a deadly weapon. Also in support of our conclusion is *State v. Rowland*, 263 N.C. 353, 139 S.E. 2d 661 (1965). In *Rowland* this Court stated that the only reasonable inference was that a dangerous weapon was used where the evidence showed that the victim received a blow to her head rendering her unconscious and opening a wound requiring eight stitches.

Thus, all of the State's uncontradicted evidence, if believed, tends to compel the conclusion that the vase as wielded by defendant, "endangered or threatened" the victim's life. There was no evidence to support an instruction on a lesser included offense, and we therefore find defendant's assignment of error in this regard to be without merit.

[3] By his final assignment of error, defendant contends that the trial judge deprived him of his constitutional rights by "death qualifying" the jury prior to the guilt phase of the trial. Defendant acknowledges that this Court has decided this claim against him on numerous occasions. *See, e.g., State v. Payne*, 312 N.C. 647, 325 S.E. 2d 205 (1985); *State v. Avery*, 299 N.C. 126, 261 S.E. 2d 803 (1980). Nonetheless, defendant requests that this Court reconsider its holdings in light of *Grigsby v. Mabry*, 758 F. 2d 226 (8th Cir. 1985), and grant him a new trial. We decline to reconsider our prior decisions on this issue.

For the reasons stated, there must be a new trial on the murder and burglary charges in this case. We find no error in the robbery conviction.

No. 83CRS75488 — first degree murder — new trial.

No. 83CRS75490 — first degree burglary — new trial.

No. 83CRS75489 — robbery with a dangerous weapon — no error.