IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-657

No. COA22-154

Filed 4 October 2022

McDowell County, Nos. 18 CRS 479, 18 CRS 495

STATE OF NORTH CAROLINA

v.

STEVEN MICHAEL SISK, JR., Defendant.

Appeal by defendant from judgment entered 18 August 2021 by Judge J. Thomas Davis in McDowell County Superior Court. Heard in the Court of Appeals 7 September 2022.

> *Attorney General Joshua H. Stein, by Assistant Attorney General William A. Smith, for the State.*
>
> *Stephen G. Driggers, PLLC, by Stephen G. Driggers, for the Defendant-Appellant.*

CARPENTER, Judge.

Steven Michael Sisk, Jr. ("Defendant") appeals from judgment after a jury convicted him of felony larceny, and after he pled guilty to attaining habitual felon status. On appeal, Defendant argues the trial court erred in refusing to provide the jury with an instruction on attempted larceny. After careful review, we find no error.

## I. Factual & Procedural Background

The State's evidence presented at trial tended to show: On 10 September 2018,

Lauren Hudgins was working the morning shift as a cashier in the Marion, North Carolina "Tractor Supply" retail store. Ms. Hudgins testified that typically only three employees work in this Tractor Supply store at a given time: a cashier, a manager, and a receiver. That day, Ms. Hudgins observed a man walking quickly out the front doors of the store pushing a shopping cart containing a Traveller truck winch, Ariat boots, and a battery. At trial, Ms. Hudgins identified Defendant as the man she observed on 10 September 2018.

¶ 3        The merchandise in Defendant's shopping cart had not been purchased and was therefore property of Tractor Supply. The anti-shoplifting devices attached to the unpaid merchandise triggered the door alarms to sound. As she was ringing up another customer, Ms. Hudgins called out to Defendant while he walked out of the store, "[h]ey, you did not pay for that." Ms. Hudgins called over the intercom for the manager on duty, Elizabeth Cadwell, the assistant store manager. Ms. Hudgins then called police as she followed Defendant out the door to obtain the tag number from his vehicle. Defendant headed towards a white Suzuki Reno that was parked in a handicap zone twenty to twenty-five feet from the front of the store.

¶ 4        As Defendant approached the vehicle, he opened the rear driver's side door of the vehicle and "th[rew the] items into the back of the car as fast as he could." A man was sitting in the driver's seat of the vehicle. Defendant got into the vehicle, and "a commotion" ensued between Defendant and the driver. Defendant got out of the

vehicle and "threw the items back on the ground and left." Defendant got back inside the vehicle, and the driver drove away. Using her cell phone, Ms. Hudgins took photographs of the license plate on the Suzuki Reno.

¶ 5          Ms. Cadwell testified that she was in the back of the store when she heard the alarm sound and received a call from Ms. Hudgins. She immediately headed to the front of the store to disable the alarm, and then proceeded outside to the parking lot as Defendant was removing the merchandise from the vehicle. As manager on duty, Ms. Cadwell took over Ms. Hudgins' call with the 911 operator, consistent with Tractor Supply's policy. As part of a report that she was compiling for the store's corporate office, Ms. Cadwell took photographs of the items Defendant removed from the store. Approximately ten minutes after being dispatched, Officer Travis Maltba ("Officer Maltba") of the Marion Police Department arrived at the store.

¶ 6          Christy King testified that she was parked in the parking lot of Tractor Supply when she witnessed a man about twenty feet away, whom she identified as Defendant at trial, running out of the store with a shopping cart and a store employee chasing after him. Ms. King observed Defendant: (1) throw the items in the vehicle, (2) jump in the vehicle where he sat for several seconds, (3) exit the vehicle; (4) throw the items down in the parking lot, and (5) get back in the vehicle. Ms. King took photographs of Defendant from her cell phone, depicting him discarding the items on the parking lot and getting into the vehicle.

¶ 7        Officer Maltba testified he observed an employee wearing a red vest whom he later identified as Ms. Cadwell.  He also observed the merchandise on the ground in the parking lot.  Officer Maltba then took statements from Ms. Cadwell and Ms. King.  Ms. Cadwell and Ms. King turned over to Officer Maltba the photographs they had each taken, and the State admitted these photographs as exhibits at trial.  Officer Maltba had encountered Defendant "several times" in the past, and Officer Maltba had no doubt the person in the photographs taken by the witnesses was Defendant.  After generating a report and completing his investigation, Officer Maltba sought and received a warrant for Defendant's arrest for misdemeanor larceny.

¶ 8        On 18 September 2018, Defendant was indicted on the charges of misdemeanor larceny, in violation of N.C. Gen. Stat § 14-72(a), and attaining habitual felon status, in violation of N.C. Gen. Stat. § 14-7.1.  On 17 May 2021, a McDowell County grand jury returned a superseding indictment for the charge of felony larceny, pursuant to N.C. Gen. Stat. § 14-72(b)(6).  The superseding indictment alleged Defendant had unlawfully, willfully, and feloniously been convicted of four misdemeanor larceny offenses prior to committing the 10 September 2018 offense.

¶ 9        On 17 August 2021, a jury trial commenced before the Honorable J. Thomas Davis in McDowell County Superior Court.  During the charge conference, counsel for Defendant "ask[ed] the court to allow the jury to consider the lesser charge of attempted larceny," considering Defendant was not apprehended on Tractor Supply

property. The trial court denied the request, finding there was "no conceivable way that the jury could, based on th[e] evidence, not find that the State has not shown substantial evidence as to each of the elements of the completed [larceny]." Defense counsel objected to the ruling.

The jury returned a unanimous verdict of guilty as to the misdemeanor larceny charge. Defendant admitted to having four prior misdemeanor larceny convictions, and he pled guilty to attaining the status of habitual felon. The trial court sentenced Defendant to a minimum of 100 months and a maximum of 132 months with the North Carolina Department of Correction. After the judgment was announced, Defendant gave oral notice of appeal in open court.

## II.    Jurisdiction

The Court has jurisdiction to address Defendant's appeal from a final judgment pursuant to N.C. Gen. Stat. § 7A-27(b) (2021) and N.C. Gen. Stat. § 15A-1444(a) (2021).

## III.    Issue

The sole issue before this Court is whether the trial court erred in refusing to include a jury instruction on the lesser included offense of attempted larceny where there is clear and positive evidence as to each element of larceny.

## IV.    Standard of Review

The Court "review[s] the trial court's denial of the request for an instruction

on the lesser included offense *de novo*." *State v. Laurean*, 220 N.C. App. 342, 345, 724, S.E.2d 657, 660 (2012) (emphasis added), *disc. rev. denied*, 366 N.C. 241, 731 S.E.2d 416. "Under a *de novo* review, [this C]ourt considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Biber*, 365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011) (citations and quotation marks omitted).

## V. Analysis

¶ 14 On appeal, Defendant argues that in viewing the evidence in the light most favorable to Defendant, "a rational juror could conclude from the evidence presented at trial that his actions fell short of a completed larceny" where Defendant left the items in the parking lot of Tractor Supply, approximately twenty-five feet from the front door of the store. He further argues there would have been evidence that the larceny was completed if he had been apprehended in the parking lot. The State contends "the evidence was clear and positive as to the charge of larceny," and thus, the trial court properly declined to include a jury instruction for attempted larceny. After careful review, we agree with the State.

¶ 15 "In North Carolina, a trial judge must submit lesser included offenses as possible verdicts, even in the absence of a request by the defendant, where sufficient evidence of the lesser offense is presented at trial." *State v. Lowe*, 150 N.C. App. 682, 686, 564 S.E.2d 313, 316 (2002) (citation omitted). However, "[w]here the State's evidence is clear and positive as to each element of the offense charged and there is

no evidence showing the commission of a lesser included offense, it is not error for the judge to refuse to instruct on the lesser offense." *State v. Peacock*, 313 N.C. 554, 558, 330 S.E.2d 190, 193 (1985) (citation omitted); *see also State v. Broome*, 136 N.C. App. 82, 88, 523 S.E.2d 448, 453 (1999) (explaining an attempt charge is not required where "the State's evidence tends to show completion of the offense" and "there is no conflicting evidence relating to the elements of the crime charged"), *disc. rev. denied*, 351 N.C. 362, 543 S.E.2d 136 (2000). "When determining whether there is sufficient evidence for submission of a lesser included offense to the jury, [this Court] view[s] the evidence in the light most favorable to the defendant." *State v. Ryder*, 196 N.C. App. 56, 64, 674 S.E.2d 805, 811 (2009) (citation omitted).

¶ 16        In this case, the trial court instructed the jury only on the offense of larceny and declined to instruct on any lesser included offense. "Larceny has been defined as a wrongful taking and carrying away of the personal property of another without his consent, . . . with intent to deprive the owner of his property and to appropriate it to the taker's use fraudulently." *State v. Carswell*, 296 N.C. 101, 103, 249 S.E.2d 427, 428 (1978) (citation and quotation marks omitted). The elements of common law larceny are that the defendant: "(1) took the property of another; (2) carried it away; (3) without the owner's consent; and (4) with the intent to deprive the owner of his property permanently." *State v. Perry*, 305 N.C. 225, 233, 287 S.E.2d 810, 815 (1982), *overruled in part on other grounds by State v. Mumford*, 364 N.C. 394, 699 S.E.2d 911

(2010).

¶ 17        The element of "taking" requires the accused have the goods "in his possession, or under his control, even if only for an instant." *Carswell*, 296 N.C. at 104, 249 S.E.2d at 429 (citation omitted) (defining "taking" as the "severance of the goods from the possession of the owner"). Our Supreme Court has made clear that "proof of asportation[, or carrying away,] is required for [a] larceny charge," although proof that the defendant is in possession of the stolen property after the larceny was completed is not required. *Perry*, 305 N.C. at 234, 287 S.E.2d at 815. Asportation, does not require "that the property be completely removed from the premises of the owner." *State v. Walker*, 6 N.C. App. 740, 743, 171 S.E.2d 91, 93 (1969). Rather, "[a] bare removal from the place in which he found the goods, though the thief does not quite make off with them, is a sufficient asportation, or carrying away." *Carswell*, 296 N.C. at 103, 249 S.E.2d at 428 (citation omitted).

¶ 18        Here, Defendant quickly passed Tractor Supply's last point of sale and walked out of the front doors pushing a shopping cart containing unpaid merchandise. Defendant unloaded the items into his vehicle. During this period, Defendant possessed and controlled the goods, thereby severing the goods from the possession of Tractor Supply for a duration of time. *See id.* at 104, 249 S.E.2d at 429. Thus, the element of "taking" was completed. *See Perry*, 305 N.C. at 233, 287 S.E.2d at 815.

¶ 19        Defendant's carrying away of the goods is evidenced by his pushing the

shopping cart out the door after a store cashier told him that the goods were not paid for and after an anti-theft alarm sounded. *See id.* at 233, 287 S.E.2d at 815. To satisfy the element of "carrying away," it was not required that Defendant leave Tractor Supply's premises with the items or that he continued to possess the items after he completed the larceny. *See Walker*, 6 N.C. App. at 743, 171 S.E.2d at 93; *Perry*, 305 N.C. at 234, 287 S.E.2d at 815.

¶ 20    Tractor Supply did not give Defendant permission to leave with the unpaid goods. Conversely, the record tends to show Ms. Hudgins called after Defendant to pay for the items as he left the store and chased him when he did not respond. Therefore, the element of "without the owner's consent" was satisfied. *See Perry*, 305 N.C. at 233, 287 S.E.2d at 815.

¶ 21    Finally, Defendant's intent to permanently deprive Tractor Supply of the items is shown by his refusal to stop when Ms. Hudgins advised he had not paid for the goods and after the door alarms went off. Defendant's intent is further shown by his loading the goods into his companion's vehicle. The intent element was completed even though he ultimately left the items on Tractor Supply's premises, apparently due to the driver's reaction. *See id.* at 233, 287 S.E.2d at 815.

¶ 22    Defendant attempts to distinguish the instant case from the unpublished decision of *State v. Boyd*, No. COA19-543, 2020 N.C. App. LEXIS 156 (N.C. Ct. App. Feb. 18, 2020) (unpublished). In *Boyd*, our Court held the trial court did not err in

refusing to instruct on the lesser included offense of attempted larceny. *Id.* at \*12. There, the defendant took another's gaming system and dropped it while running away with it. *Id.* We reasoned the defendant's taking and carrying away of the item was sufficient to show the larceny was complete, although the defendant did not know where he lost it. *Id.*

¶ 23 Defendant seemingly argues that because he knowingly left the Tractor Supply merchandise in the parking lot, unlike the defendant in *Boyd* who accidently dropped the stolen item, that Defendant only *attempted* to commit the offense of larceny. We disagree. As discussed above, the larceny was completed *before* Defendant removed the items from the vehicle and abandoned them.

¶ 24 Defendant also asserts this case is factually similar to two unpublished cases in which the State charged the defendants with attempted larceny. *See State v. Evans*, No. COA12-224, 2012 N.C. App. LEXIS 1127 (N.C. Ct. App. Oct. 2, 2012) (unpublished); *State v. Carter*, No. COA09-609, 2010 N.C. App. LEXIS 381 (N.C. Ct. App. Mar. 2, 2010) (unpublished). Defendant further argues *Evans* and *Carter* are on point where the defendants challenged the trial courts' denials of their motions to dismiss, and the evidence was viewed in the light most favorable to the State. Contrary to this assertion, Defendant contends this case is distinguishable from *State v. Carswell* because the defendant in *Carswell* was appealing the denial of a motion for nonsuit, and the evidence was considered in the light most favorable to the State.

This argument is without merit.

In *Evans*, our Court considered whether the trial court properly denied the defendant's motion to dismiss based on sufficiency of the evidence. *Evans*, No. COA12-224, 2012 N.C. App. LEXIS 1127, *3. The circumstantial evidence presented by the State tended to show the defendant removed security tags from two comforters in a Macy's department store. *Id.* at *2–3. Defendant was carrying these two comforters in the store when he dropped them and ran out of the store. *Id.* at *2. We held the State presented sufficient evidence that the defendant attempted to steal the comforters; therefore, the trial court properly denied the defendant's motion to dismiss. *Id.* at *7.

Similarly, in *Carter*, the defendant was challenging the trial court's denial of his motion to dismiss the charge of attempted larceny. *Carter*, No. COA09-609, 2010 N.C. App. LEXIS 381, *4. In that case, the defendant opened a vehicle that the local police department was using as a "bait car," stepped inside, and shut the door. *Id.* at *7. The officers approached the vehicle when the brake lights came on and while the defendant was trying to get the vehicle into gear. *Id.* at *3. We held there was sufficient evidence of each element of attempted larceny, and the trial court's dismissal of the defendant's motion to dismiss was proper. *Id.* at *8.

In neither *Evans* nor *Carter* did the State present evidence tending to show a larceny was completed. In *Evans*, the defendant did not leave the store with the

comforters, and in *Carter*, the defendant did not take or move the vehicle. Hence, the charge of attempted larceny was appropriate in these cases. The facts in this case are clearly distinguishable because Defendant completed each element of larceny, including taking unpaid merchandise outside of the store and carrying it away to his vehicle. *See Perry*, 305 N.C. at 233, 287 S.E.2d at 815.

Here, Defendant did not present evidence. In viewing the State's evidence in the light most favorable to Defendant, "the evidence is clear and positive as to each element" of larceny, and there is no evidence of Defendant committing a lesser-included offense, including attempted larceny. *See Peacock*, 313 N.C. at 558, 330 S.E.2d at 193. Therefore, we conclude the trial judge did not err in denying Defendant's request for the trial court to instruct on attempted larceny. *See id.* at 558, 330 S.E.2d at 193.

## VI. Conclusion

We hold the State presented clear and positive evidence tending to prove each element of larceny. Accordingly, we discern no error in the trial court's refusal to instruct the jury on a lesser included offense.

NO ERROR.

Judges DIETZ and COLLINS concur.