IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-847

Filed 21 November 2023

Davidson County, No. 17 CRS 51616

STATE OF NORTH CAROLINA

v.

KAJUAN DYSHAWN HAMILTON, Defendant.

Appeal by Defendant from judgment entered 4 May 2022 by Judge Joseph N. Crosswhite in Davidson County Superior Court. Heard in the Court of Appeals 23 May 2023.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Kimberly D. Potter, for the State.*

*Wyatt Early Harris Wheeler LLP, by Stanley F. Hammer, for Defendant-Appellant.*

CARPENTER, Judge.

Kajuan Dyshawn Hamilton ("Defendant") appeals from judgment after a jury convicted him of two counts of robbery with a dangerous weapon. On appeal, Defendant argues the trial court erred by: (1) denying Defendant's motion for new counsel; (2) failing to intervene *ex mero motu* during Defendant's cross-examination; and (3) failing to instruct the jury on the lesser included offense of common-law robbery. After careful review, we conclude the trial court plainly erred by failing to instruct the jury on the lesser included offense. Accordingly, we vacate the trial

court's judgment as to the second count of robbery with a dangerous weapon, and we remand for a new trial concerning that count.

## I.    Factual & Procedural Background

On 5 March 2018, a Davidson County grand jury indicted Defendant on two counts of robbery with a dangerous weapon. The State tried the case during the 3 May 2022 Criminal Session of Davidson County Superior Court before the Honorable Joseph Crosswhite. At the beginning of trial, Defendant orally moved for new appointed counsel. Defendant requested new counsel because his appointed counsel was blind. This was Defendant's third appointed counsel: his first withdrew, and his second discovered a conflict of interest. The trial court inquired into Defendant's position and heard from both Defendant's counsel and the State. The State asked the trial court to proceed with Defendant's counsel, and Defendant's counsel was willing to proceed. The trial court denied Defendant's motion for new counsel.

At trial, evidence tended to show the following. On 13 December 2016, Defendant and Willie Thomasson entered a gaming business (the "Business") in Davidson County. Todd Bauguess was managing the Business at the time Defendant and Thomasson entered. Upon entering the Business, Defendant drew his firearm and pointed it at Bauguess. Defendant then demanded money from Bauguess, while Thomasson approached Business patrons, including Larry McClendon, and demanded money from them. Before leaving, Defendant and Thomasson took money from Bauguess, the Business, and McClendon, as well as Bauguess' gun and driver's

license. Police arrived approximately ten minutes after Defendant and Thomasson left the Business.

After the robbery, police obtained images from the Business' surveillance videos and issued a press release asking for help identifying the suspects. Based on the surveillance images, a corrections officer identified Defendant as one of the suspected robbers. On this information, police asked Bauguess if he would review a lineup of potential suspects. Bauguess agreed, and he identified Defendant from the lineup as one of the robbers. In addition to the trial testimony, the jury viewed the Business' surveillance video from 3 December 2016.

Defendant failed to request an instruction on the lesser included offense of common-law robbery, and the jury found Defendant guilty of two counts of robbery with a dangerous weapon: one direct count regarding Bauguess and one count for acting in concert with Thomasson regarding McClendon. Defendant gave oral notice of appeal in open court.

## II.  Jurisdiction

This Court has jurisdiction pursuant to N.C. Gen. Stat. § 7A-27(b)(1) (2021).

## III.  Issues

The issues on appeal are whether the trial court erred by: (1) denying Defendant's motion for new counsel; (2) failing to intervene *ex mero motu* during Defendant's cross-examination; and (3) failing to instruct the jury on the lesser included offense of common-law robbery.

## IV.    Analysis

### A. Motion for New Counsel

In his first argument, Defendant asserts the trial court erred by failing to grant his motion for new counsel. We disagree.

Whether a trial court erred in denying a defendant's motion for new appointed counsel is reviewed for abuse of discretion. *State v. Hutchins*, 303 N.C. 321, 336, 279 S.E.2d 788, 798 (1981) ("[T]he decision of whether appointed counsel shall be replaced is a matter committed to the sound discretion of the trial court."). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988).

An indigent defendant does not have the right to choose his appointed counsel. *State v. McNeil*, 263 N.C. 260, 270, 139 S.E. 2d 667, 674 (1965). When an indigent defendant requests new appointed counsel, however, "the obligation of the court [is] to inquire into defendant's reasons for wanting to discharge his attorneys and to determine whether those reasons were legally sufficient to require the discharge of counsel." *Hutchins*, 303 N.C. at 335, 279 S.E.2d at 797. There is a legally sufficient reason for new appointed counsel "whenever representation by counsel originally appointed would amount to denial of defendant's right to effective assistance of counsel, that is, when the initial appointment has not afforded defendant his

constitutional right to counsel." *State v. Thacker*, 301 N.C. 348, 352, 271 S.E.2d 252, 255 (1980). Concerning the "constitutional right to counsel," the *Thacker* Court said:

> when it appears to the trial court that the original counsel is reasonably competent to present defendant's case and the nature of the conflict between defendant and counsel is not such as would render counsel incompetent or ineffective to represent that defendant, denial of defendant's request to appoint substitute counsel is entirely proper.

*Id.* at 352, 271 S.E.2d at 255. In other words, *Thacker* presents a two-part test for determining whether to grant a motion for new appointed counsel. *See id.* at 352, 271 S.E.2d at 255. To receive new appointed counsel, the defendant must either show: (1) his current counsel is not "reasonably competent" to present the defendant's case; or (2) there is a conflict between the defendant and his appointed counsel that renders counsel "incompetent or ineffective." *See id.* at 352, 271 S.E.2d at 255.

In *State v. Jones*, however, our Supreme Court took a different route to review a request for new counsel. 357 N.C. 409, 413, 584 S.E.2d 751, 754 (2003). Because *Jones* potentially clouds our standard of review in these cases, we will illustrate the Court's reasoning and reconcile it with the established standard. *See Hutchins*, 303 N.C. at 336, 279 S.E.2d at 798; *Thacker*, 301 N.C. at 352, 271 S.E.2d at 255. In *Jones*, the Court initially acknowledged the abuse-of-discretion standard. *Jones*, 357 N.C. at 413, 584 S.E.2d at 754. But directly after announcing the abuse-of-discretion standard, the Court stated that "'a defendant must show that he received ineffective assistance of counsel.'" *Id.* at 413, 584 S.E.2d at 754 (quoting *State v. Thomas,* 350

N.C. 315, 328–29, 514 S.E.2d 486, 495 (1999). From there, the Court discussed our Sixth Amendment standard for ineffective assistance of counsel. *See id.* at 413, 584 S.E.2d at 754.

The Sixth Amendment standard for ineffective assistance of counsel, however, is reviewed de novo. *State v. Wilson,* 236 N.C. App. 472, 475, 762 S.E.2d 894, 896 (2014). So, the *Jones* Court discerned whether there was an abuse of discretion by analyzing, de novo, whether there was prejudice via ineffective assistance of counsel. *See Jones,* 357 N.C. at 413, 584 S.E.2d at 754. In other words, if the *Jones* Court retrospectively found the appointed counsel effective, the trial court clearly did not err by denying the motion for new counsel because the counsel was indeed effective. *See id.* at 413, 584 S.E.2d at 754. Said another way: No prejudice, no abuse of discretion. *See id.* at 413, 584 S.E.2d at 754.

After its Sixth Amendment analysis, the *Jones* Court stated that the "hearing judges did not abuse their discretion in denying defendant's motions to dismiss [the appointed] counsel. Since defendant did not meet the two-pronged *Strickland* test, *it follows that the denials of defendant's motions were not 'manifestly unsupported by reason.'" Id.* at 416–17, 584 S.E.2d at 756 (quoting *State v. T.D.R.,* 347 N.C. 489, 503, 495 S.E.2d 700, 708 (1998) (emphasis added). The *Strickland* test is, of course, used to determine whether a defendant's Sixth Amendment right to effective assistance of counsel was violated. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674, 693 (1984).

Put differently, the *Jones* Court backed into its abuse-of-discretion analysis by discerning whether the defendant was prejudiced. *See Jones*, 357 N.C. at 416–17, 584 S.E.2d at 756. The *Jones* Court seemingly used this logic: (1) a Sixth Amendment ineffective-assistance-of-counsel violation turns on whether a defendant received effective assistance of counsel; (2) an erroneous denial of a motion for new counsel turns on whether a defendant *could have* received effective assistance of counsel; (3) an alleged Sixth Amendment violation is reviewed de novo; (4) a denial of a motion for new appointed counsel is reviewed for abuse of discretion; (5) de novo review is more exacting than abuse-of-discretion review; therefore, (6) if there is no Sixth Amendment violation under a de novo review, it follows that a trial court did not abuse its discretion by denying a defendant's motion for new appointed counsel. *See id*. at 416–17, 584 S.E.2d at 756. Although it reached the right destination, the *Jones* Court skipped the straightforward abuse-of-discretion review described in *Thacker* for the meandering, and avoidable, Sixth Amendment review.

We, however, will purely review the trial court's denial of Defendant's motion for new counsel for abuse of discretion. *See Hutchins*, 303 N.C. at 336, 279 S.E.2d at 798; *Thacker*, 301 N.C. at 352, 271 S.E.2d at 255. On a motion for new appointed counsel, a trial judge must decide—in the moment—whether appointed counsel *can* provide effective assistance of counsel. *See Thacker*, 301 N.C. at 352, 271 S.E.2d at 255. A trial judge does not have the benefit of hindsight: When a defendant makes a motion for new counsel, the trial judge must decide whether (1) a defendant's current

counsel is "reasonably competent" to present the case; or (2) there is a conflict between the defendant and his appointed counsel that renders counsel "incompetent or ineffective." *Id.* at 352, 271 S.E.2d at 255. This is a forward-looking decision, made in the moment. Such a decision is in the sound discretion of the trial judge, and it is reviewed for abuse of discretion. *See Hutchins*, 303 N.C. at 336, 279 S.E.2d at 798. If a defendant wants a retroactive, de novo review of whether he received effective assistance of counsel, he must make a Sixth Amendment argument. *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064, 80 L. Ed. 2d at 693. Defendant made no such argument.

Here, Defendant asserts the trial court erred by denying his motion for new appointed counsel. Defendant asserts the trial court abused its discretion because his appointed counsel was blind. The parties do not dispute that Defendant's counsel was blind. We cannot conclude, however, that the trial court abused its discretion by allowing Defendant's counsel to proceed in this case.

We turn to the two-part *Thacker* test. First, Defendant does not allege a conflict between him and his counsel. Therefore, no conflict could have "render[ed] counsel incompetent or ineffective to represent" Defendant. *See Thacker*, 301 N.C. at 352, 271 S.E.2d at 255. Second, Defendant's only complaint about his appointed counsel was his counsel's blindness. As Defendant's only complaint was about his counsel's blindness, if we hold that the trial court abused its discretion, we hold that it is impossible for a blind lawyer, as such, to have been "reasonably competent" to

present Defendant's case. *See id.* at 352, 271 S.E.2d at 255. In other words, if we hold the trial court abused its discretion merely because Defendant's counsel was blind, we necessarily hold that it is "manifestly unsupported by reason" to allow blind lawyers to practice criminal law. *See Hennis*, 323 N.C. at 285, 372 S.E.2d at 527. That, however, is a question for the State Bar, not this Court. *See* N.C. Gen. Stat. §§ 84-15 to -38 (2021) (granting the State Bar authority to manage admission to practice law in North Carolina). Defendant's counsel is licensed to practice law in this state, and we cannot say the trial court abused its discretion by failing to replace him because of an immutable physical condition—a physical condition that is not limited to this case.

Thus, the trial court's "denial of [D]efendant's request to appoint substitute counsel [was] entirely proper" because Defendant did not offer a valid reason why his counsel was not reasonably competent to present his case, nor did Defendant assert a conflict with his counsel. *See Thacker*, 301 N.C. at 352, 271 S.E.2d at 255. The trial court satisfied its obligation by "inquir[ing] into [D]efendant's reasons for wanting to discharge his attorney[] and . . . determin[ing] whether those reasons were legally sufficient to require the discharge of counsel." *See Hutchins*, 303 N.C. at 335, 279 S.E.2d at 797. The trial court's determination aligned with our State Bar, finding Defendant's counsel competent to practice law, and we think the trial court's decision was reasonable. *See Hennis*, 323 N.C. at 285, 372 S.E.2d at 527. Accordingly, the

trial court did not abuse its discretion by allowing Defendant's appointed counsel to proceed in this case. *See id.* at 285, 372 S.E.2d at 527.

**B. Cross-Examination of Defendant**

In his second argument, Defendant asserts the trial court erred by failing to intervene *ex mero motu* during the State's cross-examination of Defendant. Although we agree with Defendant to the extent he argues the State's cross-examination of him was inappropriate, we conclude the trial court did not plainly err.

This Court reviews "unpreserved issues for plain error when they involve either (1) errors in the judge's instructions to the jury, or (2) rulings on the admissibility of evidence." *State v. Gregory*, 342 N.C. 580, 584, 467 S.E.2d 28, 31 (1996). To find plain error, first, this Court must determine that an error occurred at trial. *State v. Towe*, 366 N.C. 56, 62, 732 S.E.2d 564, 568 (2012). Second, the defendant must demonstrate the error was "fundamental," which means the error "had a probable impact on the jury's finding that the defendant was guilty" and "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *State v. Grice*, 367 N.C. 753, 764, 767 S.E.2d 312, 320–21 (2015) (internal quotations and citations omitted). Notably, the "plain error rule . . . is always to be applied cautiously and only in the exceptional case . . . ." *State v. Odom*, 307 N.C. 655, 661, 300 S.E.2d 375, 378 (1983) (citing *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir. 1982)).

North Carolina "adheres to the 'wide-open' rule of cross-examination . . . ." *State v. Penley*, 277 N.C. 704, 708, 178 S.E.2d 490, 492 (1971). Thus, "[a] witness may be cross-examined on any matter relevant to any issue in the case, including credibility." N.C. Gen. Stat. § 8C-1, Rule 611(b) (2021). A matter is relevant if it has any tendency to make a consequential fact more or less probable. *State v. Griffin*, 136 N.C. App. 531, 550, 525 S.E.2d 793, 806 (2000). Credibility is relevant and may be cross-examined through questions about specific instances of a witness's conduct, but only insofar as the questions examine the witness's character for truthfulness or untruthfulness. N.C. Gen. Stat. § 8C-1, Rule 608(b) (2021); *State v. Morgan*, 315 N.C. 626, 633–34, 340 S.E.2d 84, 89 (1986).

Here, Defendant asserts the trial court erred by failing to intervene *ex mero motu* during the State's cross-examination of him. Defendant argues the State's cross-examination was irrelevant and an improper form of impeachment. The challenged exchange, in which the State questioned Defendant about his interactions with the court before his trial began, is as follows:

> **Q**. And what words did you use towards the people in this courtroom whenever you were angry about that?
> **A**. It's beyond that. We all know what was said. I know what was said. The jury wasn't there when it was said, so it's beyond that.
> **Q**. If you would answer the question.
> **A**. I did answer it, ma'am.
> **Q**. What words did you use whenever you were angry?
> **A**. Any words that a man or a person would use when they're angry.
> **Q**. Mr. Hamilton, if you would please answer the question.

**A**.  I did answer it for you, ma'am.

**Q**.  What words did you use?

**A**.  Words that would be used when a person's angry.

**Q**.  And what words were those?

**A**.  I'm not going to speak on them.  And thank you.  I'll continue on answering your questions.  Thank you.

**Q**.  Mr. Hamilton, what words did you use?

**A**.  Words that anybody would use when they're angry.

**Q**.  What words did you use whenever you were angry in the courtroom?

**A**.  The same words that you would use when you're angry.

**Q**.  Mr. Hamilton, I'm asking you what words you used.

**A**.  I don't recall the words that I used.

**Q**.  Did you say that—did you use the word "mother fucker"?

**A**.  I don't know.  Did I?

**Q**.  Did you say that you were "getting fucked"?

**A**.  To my knowledge and how I feel, yes, I do feel like that.

**Q**.  Did you say that you were "getting raped"?

**A**.  What's happening?  I'm being took from my family.

**Q**.  Is that a yes?

**A**.  I didn't deny it.

Q.  Did you say that I was a racist?

**A**.  You act like it.

Q.  Is that a yes?

**A**.  No.  Because you didn't hear that come out of my mouth and say you racist.  I said Davidson County, period.

**Q**.  You don't remember pointing at me and screaming that I was a racist from Jump Street?

**A**.  Well, if I did, I did.  I don't recall.

Defendant's counsel did not object to this portion of the cross-examination.

First, Defendant's exchange with the court, over five years after the crimes in question, has no tendency to make a consequential fact concerning those crimes more or less probable.  *See Griffin*, 136 N.C. App. at 550, 525 S.E.2d at 806.  Second, although Defendant's cross-examined conduct may have been probative concerning

his general character, his examined conduct was irrelevant to his character for truthfulness. Therefore, the State's inquiry into these actions was an inappropriate form of impeachment. *See Morgan*, 315 N.C. at 633–34, 340 S.E.2d at 89; N.C. Gen. Stat. § 8C-1, Rule 608(b).

The trial court's failure to intervene, however, does not rise to "plain error." There was ample evidence of Defendant's guilt in this case, including video footage and eyewitness testimony. Through video footage, the jury could see for itself whether Defendant committed the charged crimes: The State's inappropriate cross-examination had no bearing on the jury's ability to consider the video evidence. Considering the evidence in the record, we cannot say the trial court's failure to intervene impacted "the jury's finding that the defendant was guilty" or "seriously affect[ed] the fairness" of the trial. *See Grice*, 367 N.C. at 764, 767 S.E.2d at 320–21. Accordingly, the trial court did not plainly err. *See Odom*, 307 N.C. at 661, 300 S.E.2d at 378.

### C. **Lesser Included Offense**

In his third argument, Defendant asserts the trial court erred by failing to instruct the jury on the lesser included offense of common-law robbery as to Defendant's second count of robbery with a dangerous weapon. We agree with Defendant: The trial court plainly erred.

Again, this Court reviews unpreserved objections to jury instructions for plain error. *Gregory*, 342 N.C. at 584, 467 S.E.2d at 31. And to show plain error, Defendant

must demonstrate the error was "fundamental," which means the error "had a probable impact on the jury's finding that the defendant was guilty" and "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *Grice*, 367 N.C. at 764, 767 S.E.2d at 320–21. Failing to properly instruct a jury on a lesser included offense is a fundamental error: It "constitutes reversible error that cannot be cured by a verdict finding the defendant guilty of the greater offense." *State v. Lawrence*, 352 N.C. 1, 19, 530 S.E.2d 807, 819 (2000).

"An instruction on a lesser[ ]included offense must be given only if the evidence would permit the jury rationally to find defendant guilty of the lesser offense and to acquit him of the greater." *State v. Millsaps*, 356 N.C. 556, 561, 572 S.E.2d 767, 771 (2002). "The test is whether there 'is the presence, or absence, of any evidence in the record which might convince a rational trier of fact to convict the defendant of a less grievous offense.'" *Id.* at 562, 572 S.E.2d at 772 (quoting *State v. Wright*, 304 N.C. 349, 351, 283 S.E.2d 502, 503 (1981)).

A defendant commits robbery with a dangerous weapon when he: (1) unlawfully takes another's property; (2) by using a dangerous weapon; (3) that threatens another person's life. *State v. Bellamy*, 159 N.C. App. 143, 147, 582 S.E.2d 663, 667 (2003). The difference between robbery with a dangerous weapon and common-law robbery is that "the former is accomplished by the use or threatened use of a dangerous weapon whereby the life of a person is endangered or threatened." *State v. Peacock*, 313 N.C. 554, 562, 330 S.E.2d 190, 195 (1985).

Concerning his second count, Defendant claims he was entitled to a jury instruction on common-law robbery. Here, Defendant was convicted of the second count of robbery with a dangerous weapon because he acted in concert with Thomasson. Bauguess testified that Defendant pointed a gun at him and ordered him to get the money from behind the counter. At the same time, Thomasson approached McClendon and took his money, while McClendon pleaded: "Man, I've got kids." Thomasson, however, did not have a firearm when he approached McClendon; Thomasson did not have a firearm at any time during the robbery. McClendon's mention of his children is evidence McClendon feared for his life. But Thomasson's lack of a firearm is evidence that a dangerous weapon was not used to take McClendon's money, and Thomasson's lack of a firearm is also evidence that McClendon did not fear for his life.

The record shows Defendant indeed used a firearm to threaten Bauguess, but as neither Defendant nor Thomasson approached McClendon with a firearm, a rational jury could have reasonably inferred that neither Defendant nor Thomasson used a dangerous weapon to threaten McClendon. *See Bellamy*, 159 N.C. App. at 147, 582 S.E.2d at 667. Therefore, concerning Defendant's second count, a rational jury could have convicted Defendant of common-law robbery, rather than robbery with a dangerous weapon, because the difference between the crimes is the use of a dangerous weapon to threaten a life. *See Peacock*, 313 N.C. at 562, 330 S.E.2d at 195; *Millsaps*, 356 N.C. at 561, 572 S.E.2d at 771.

- 15 -

Accordingly, because a rational jury could have viewed the evidence to support common-law robbery and not robbery with a dangerous weapon, the trial court erred by not instructing the jury on common-law robbery concerning Defendant's second count. *See Bellamy*, 159 N.C. App. at 147, 582 S.E.2d at 667; *Millsaps,* 356 N.C. at 561, 572 S.E.2d at 771; *Peacock*, 313 N.C. at 562, 330 S.E.2d at 195. Therefore, the trial court plainly erred in failing to instruct the jury on the lesser included offense. *See Lawrence*, 352 N.C. at 19, 530 S.E.2d at 819. Thus, we vacate and remand the trial court's judgment concerning Defendant's second count of robbery with a dangerous weapon.

## V.    Conclusion

In sum, the trial court did not abuse its discretion by failing to grant Defendant's motion for new counsel, and the trial court did not plainly err by failing to intervene *ex mero motu* during the State's cross-examination of Defendant. *See Hennis*, 323 N.C. at 285, 372 S.E.2d at 527; *Odom*, 307 N.C. at 661, 300 S.E.2d at 378. The trial court did, however, plainly err in failing to instruct the jury on the lesser included offense concerning Defendant's second count of robbery with a dangerous weapon. Failing to instruct the jury on the lesser included charge is a plain, reversible error; therefore, we must vacate and remand the trial court's judgment concerning the second count of robbery with a dangerous weapon. *See Lawrence*, 352 N.C. at 19, 530 S.E.2d at 819; *Bellamy*, 159 N.C. App. at 147, 582 S.E.2d at 667; *Millsaps,* 356 N.C. at 561, 572 S.E.2d at 771.

NO PREJUDICIAL ERROR in part; VACATED and REMANDED in part.

Chief Judge STROUD and Judge DILLON concur.